Anthony Babbitt, Pro Se
1124 E Sleepy Hollow Lane, Sandy, UT 84094
(801) 638-2313

J Phillip Willson, Pro Se
1231 Brandy Lane, Tooele UT 84074
(801) 808-3912

FILED
U.S. DISTRICT COURT

2015 MAR 30  A 10: 26

DISTRICT OF UTAH

BY:_____
      DEPUTY CLERK

---

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

---

| | |
|---|---|
| Anthony B. Babbitt & J. Phillip Willson,<br>**Plaintiffs**<br><br>vs<br><br>Hon. Mark Kouris, 3rd District Court,<br>State of Utah; &<br>Hon. Constantinos Himonas, Supreme Court,<br>State of Utah; &<br>Colin Winchester, Executive<br>Director, Utah Judicial Conduct Commission; &<br>members of the Utah Judicial Conduct<br>Commission; &<br>John and Jane Does 1-25, whose true names<br>are presently unknown,<br>**Defendants** | **CIVIL RIGHTS COMPLAINT**<br>(42 U.S.C §1983, §1985, §1986)<br><br>Case: 2:15cv00208<br>Assigned To : Wells, Brooke C.<br>Assign. Date : 3/30/2015<br>Description: Babbitt et al v. Kouris et al<br><br>**JURY TRIAL DEMANDED** |

---

## NATURE OF ACTION

1. This is a civil action under 42 U.S.C § 1983, seeking damages and other relief against

Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States, as well as the Constitution and laws of the State of Utah; retaliating against Plaintiffs for their exercise of constitutionally protected rights; and for refusing or neglecting to prevent such deprivations and denials to Plaintiffs. This action arises from some of the most chilling episodes of premeditated judicial misconduct in modern American history, but which has also become 'business as usual' within the State of Utah judiciary.

2. From January 2010 to present, Defendants, as well as yet to be named Defendants expected to join this action, individually and in concert, maliciously and willfully conspired to repeatedly and predictably deny both Plaintiffs of their civil rights protected by both the United States Constitution and Constitution of the State of Utah and Utah common law. Defendants utilized their positions within the State of Utah Judiciary to perpetrate these abuses and then take steps to cover them up and have maliciously persecuted the Plaintiffs for their efforts to correct these injustices.

3. Predominantly, these actions originate with Hon. Mark Kouris and his abuse of his position as Judge in two cases in which the Plaintiffs are parties. Upon reporting the matters in question to the Judicial Conduct Commission, Judge Kouris was immediately notified of the complaints and has taken actions to punish the Plaintiffs for reporting him. Judge Kouris is now stalking the Plaintiffs within the Utah court system so he can exact further revenge.

4. Colin Winchester, Executive Director of the Judicial Conduct Commission, and his staff, repeatedly and willfully violated the confidentiality of the office he holds, sharing confidential complaints with third parties. The Judicial Conduct Commission has not only excused Judge Kouris' reprehensible behavior but by taking no action to correct it, has tacitly endorsed his willful abuse of his position.

5. Judge Constantinos Himonas used his position within the Judicial Conduct Commission to pass information regarding complaints to a friend of his, Judge Kouris. Furthermore, in violation of Utah Canon of Judicial Conduct, Judge Himonas sought to protect his friend Judge Kouris from at least five Motions to Disqualify.

6. The fact that this sort of conduct is not only allowed but also condoned and hidden shows a systemic abuse of power that exists within the State of Utah Judiciary.

7. It is probable there were other parties involved in the above actions and Plaintiffs preserve their right to add these parties as the John and Jane Does above.

8. As a result of Defendants actions, Plaintiffs have suffered deprivations of the rights guaranteed

to them under the First Amendment, the Deprivation of Property Clause of the Fifth
Amendment, Ninth Amendment, and Due Process and Equal Protection Clauses of the
Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, §1985, §1986,
Article I, Sections 1, 3, 4, 7, 11, 16 & 25 and Article IV, Section 10, and Article VIII, Section 13
of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2,
2.3, 2.4, 2.6, 2.7, 2.8, 2.9, 2.10, 2.11, 2.12, 2.13, 2.15 & 2.16 of the Utah Code of Judicial
Conduct, Utah Statutes 78B - Chapter 12, 78B-15-108, 30-3-5, 30-3-34,30-3-34.5, 30-3-35, 30-
3-36 & 30-3-37 and Utah Rules of Civil Procedure section 44, 63, 63A, 77 & 108; they have
suffered economic, emotional, and physical harm; they have suffered irreparable harm to their
reputations and relationships with their children; and they have incurred hundreds of thousands
of dollars in legal fees defending themselves against abuses that the Defendants knew were
implemented solely to cause harm to Plaintiffs and without any basis in law.

9.  Because of the irreparable harm which will result from this continued conduct, Plaintiffs seek
damages and other relief, as set forth in further detail below, to protect the Plaintiffs as well as
all other persons before the State of Utah Judiciary, and to prevent such misconduct from ever
recurring. While courts have previously decided that damages cannot be obtained from
individual judges, the matter of damages incurred stemming from conspiracy within the entire
State of Utah Branch of the Judiciary HAS NOT been determined and is therefore properly
before this court. State entities such as the 3rd District Court and Judicial Conduct Commission
do not share the same immunity from damages as individual judges.

## JURISDICTION AND VENUE

10. This case arises under the First Amendment, the Deprivation of Property Clause of the Fifth
Amendment, Ninth Amendment, and Due Process and Equal Protection Clauses of the
Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, §1985, §1986,
Article I, Sections 1, 3, 4, 7, 11, 16 & 25 and Article IV, Section 10, and Article VIII, Section 13
of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2,
2.3, 2.4, 2.6, 2.7, 2.8, 2.9, 2.10, 2.11, 2.12, 2.13, 2.15 & 2.16 of the Utah Code of Judicial
Conduct, Utah Statutes 78B - Chapter 12, 78B-15-108, 30-3-5, 30-3-34,30-3-34.5, 30-3-35, 30-
3-36 & 30-3-37 and Utah Rules of Civil Procedure section 44, 63, 63A, 77 & 108.

11. This Court has jurisdiction in this matter pursuant to 28 U.S.C. Sections 1331 and 1343. The
declaratory and injunctive relief sought is authorized by 28 U.S.C. Sections 2201 and 2202, 42

U.S.C. Sections 1983, 1985, 1986 and Rule 57 of the Federal Rules of Civil Procedure.

12. Venue is proper in the Central Division of the United States District Court for the District of Utah to 28 U.S.C. §§ 1391(b)(1), (2), and (3), because most or all of the Defendants reside and may be found in the Central Division of the United States District Court for the District of Utah and a substantial part of the events giving rise to these claims occurred in the Central Division of the United States District Court for the District of Utah.

13. Furthermore, Plaintiffs lack the ability to address these issues within the Utah state courts because the very nature of the claims contained herein, namely a conspiracy amongst the judiciary, including specifically at least one Utah Supreme Court Justice and the Judicial Conduct Commission.

## PARTIES

14. PLAINTIFFS

  1. Anthony B. Babbitt is a citizen of the State of Utah with a present mailing address of: 1124 E Sleepy Hollow Lane, Sandy, UT 84094 & Phone of: (801) 638-2313.

  2. J. Phillip Willson is a citizen of the State of Utah with a present mailing address of: 1231 Brandy Lane, Tooele UT 84074 & Phone of: (801) 808-3912

15. DEFENDANTS

  1. Hon. Mark Kouris is a citizen of the State of Utah, acting on behalf of the State of Utah in his capacity as Presiding Judge in both Case #104400226 wherein Anthony B. Babbitt (above) is the Respondent & case #144907061/124401456 wherein J. Phillip Willson is the Respondent. The address of his court is Salt Lake County 3rd District Court, 450 South State Street, PO Box 1860, Salt Lake City, UT 84114-1860. Hon. Mark Kouris was acting under the authority and/or color of state law at the time these claims occurred, in his capacity of Presiding Judge in the above-mentioned cases.

  2. Hon. Constantinos Himonas is a citizen of the State of Utah, acting on behalf of the State of Utah in his capacity as Judge for the 3rd District Court in the State of Utah & Member of the Judicial Conduct Commission. The address of his court is Salt Lake County 3rd District Court, 450 South State Street, PO Box 1860, Salt Lake City, UT 84114-1860. Hon. Constantinos Himonas was acting under the authority and/or color of state law at the time these claims occurred, in his capacity of Associate Presiding Judge for the 3rd District Court.

3. Colin Winchester is a citizen of the State of Utah, acting on behalf of the State of Utah in his capacity as Executive Director for the Utah Judicial Conduct Commission whose address is 2540 Washington Boulevard, Suite 703, Ogden, Utah 84401. Colin Winchester was acting under the authority and/or color of state law at the time these claims occurred, in his capacity of Executive Director of the Judicial Conduct Commission and as the person who communicated with Mr. Babbitt & Mr. Willson regarding their complaints against Hon. Mark Kouris.

4. The Utah Judicial Conduct Commission (herein referred to as JCC) is an 11-member "independent" fact-finding body established by Article VIII, Section 13 of the Constitution of Utah and whose address is 2540 Washington Boulevard, Suite 703, Ogden, Utah 84401. The Utah Judicial Conduct Commission was acting under the authority and/or color of state law at the time these claims occurred, in handling and reviewing the complaints filed against the Hon. Mark Kouris by various parties including attorneys, but also in their surreptitiously conveying said complaints to the Hon. Mark Kouris, which resulted in his retaliation against Mr. Babbitt & Mr. Willson, as well as other parties. Furthermore, the Utah Judicial Conduct Commission has taken steps to 'cover up' the misdeeds of the Hon. Mark Kouris and protect both the judge and the State of Utah from damages resulting from the Hon. Mark Kouris' actions and retaliation against the Plaintiffs in this matter.

5. Upon information and belief, Defendants John and Jane Does 1 through 25, whose true identities are presently unknown, at all relevant times herein were employed by and acting under the authority of the State of Utah, and are individuals whose names and addresses of residences are unknown.

## FACTUAL ALLEGATIONS

16. Prior to attending law school, Judge Kouris received a Bachelor's Degree in Accounting and a Masters Degree in Business Administration from the University of Utah. He worked in upper management for Procter & Gamble before starting and managing Pack & Send Plus, Inc., a packaging and shipping company.

17. Judge Kouris received his law degree from the University of Utah in 1993. After selling the company, Judge Kouris worked as an Assistant Utah Attorney General before serving as a Deputy District Attorney where he prosecuted gang felonies. Judge Kouris then joined the Utah Federal Defender's Office where he worked before being appointed to the bench. During this

time he became well-known within the Greek community for the pro bono work he did for other Greek families facing legal situations.

18. Judge Mark S. Kouris was appointed to the Third District Court in May 2006 by Gov. Jon M. Huntsman, Jr. Judge Kouris serves Salt Lake, Summit, and Tooele counties. Judge Kouris is an adjunct professor at the University of Utah College of Law and at Salt Lake Community College. He has served on the Board of District Court Judges from 2011 to present. In addition, Judge Kouris is a Third District Drug Court judge serving in Tooele County from 2006 to 2008 and Salt Lake County from 2008 to present.

19. Since 2002, Mark Kouris has been Director & Treasurer of Stan's Market at 4195 W 5415 S , Kearns, UT 84118. Stan's Market is a family-owned company within the Kouris family and well-known within the Greek Community. Judge Kouris is a prominent member of the Greek Community, attending the Holy Trinity Cathedral Prophet Elias Church Orthodoxy in Salt Lake City.

20. Since taking the bench in May 2006, Judge Kouris has continued his benevolence toward the Greek community and it has become common knowledge that he will not only offer his services in his capacity as judge, but also provide those services when called upon by members of the Greek community. His case history is replete with examples of his efforts to favorably discharge legal matters on behalf of his Greek brethren He frequently receives telephone calls and visits to his judicial chamber where he receives requests and offers his aid.

21. To that end, Mark Kouris joined Facebook.com, creating an account in May 2009. This has greatly eased the process of communicating favors and implementing them, on a 3rd party network known for refusing state subpoenas concerning member communications. His friends list contains over 400 people, excluding immediate family members. However, a quick comparison of Utah court cases and his friends lists yields many, many examples of the recipients of his judicial favors, including but not limited to the Xaiz Family, the Adondakis Family, the Chachas Family, The Franchow Family & the Kambouris Family. This list is not complete and specific cases and witnesses will be called in the course of this suit to substantiate these claims, as well as other unnamed families. However, this list shows that the Greek 'friends' on Judge Kouris Facebook.com page are the recipients of his services on their behalf, which is a direct abuse of his position within the Utah Judiciary.

22. Although no witnesses have yet admitted to any form of payment to Judge Kouris for these services in their cases, it goes without saying that Judge Kouris benefits from this abuse of his judicial position. He is adept at removing Utah state tax liens, University of Utah hospital liens,

elimination of DUI charges (in one case the defendant tested a BAC of 0.127, yet the charge was dropped), elimination of other criminal charges including most predominantly traffic citations (since these are the most common criminal actions police are involved in), stopping foreclosure actions to prevent Greek families from losing their homes, reducing fines and jail sentences, aiding one side in divorce and/or custody cases and many other benefits to people he deems worthy.

23. Predominantly Judge Kouris uses back channel methods of communicating directly to other judges and/or their staff, as well as police departments and prosecutors. His name rarely shows up on the court records but we have several witnesses who have benefited directly from his services and/or received offers from him to abuse his office on their behalf. Ex parte communication is the norm where Judge Kouris is involved. Unfortunately, Judge Kouris forgot that when you offer your bench to some, others who hear of the offer but are not able to benefit, become willing witnesses to testify. And we have found some beneficiaries who are so proud of their 'Greek connection' that they openly flaunt this service he renders their community and them directly.

24. With regard to implementing this favors, Judge Kouris' Facebook friends list denotes several noteworthy 'friends' whom he has called upon to perform the favors for his Greek brethren. Specifically, his friends include the Salt Lake County District Attorney's office, General Counsel at the University of Utah, the West Valley City Prosecutor's Office, the Utah Attorney's General Office, the law offices of Roberto Hernandez, the law offices of Pia, Anderson, Dorius, Reynard & Moss, the law offices of Finlayson & Osburn, the law offices of Parsons, Behle & Latimer and many others. Judge Kouris calls on these Utah State agencies and private law firms to perform the favors he guarantees to the Greek community.

25. It is important to note that the Hon. Constantinos Himonas is also a member of the Greek Community and knows Judge Kouris personally & professionally. Judge Himonas graduated Magna Cum Laude and Phi Beta Kappa from the University of Utah in 1986 and received his Juris Doctorate from the University of Chicago in 1989. He is currently a fellow of the American Bar Foundation, a former member of the Judicial Conduct Commission and co-chair of the 3rd District Court Pro Bono Commission. He was recently appointed to the Utah Supreme Court. He previously served as the chair of the executive committee of Utah State Bar's litigation section, a member of the Federal Bar Association Executive Committee, a member of the Salt Lake Bar Association Executive Committee and a member of the Utah Supreme Court Advisory Committee on Judicial Canons.

26. Since before taking the bench, Judge Kouris has developed a reputation of having favor for and with the ladies. In his capacity as judge he tends to let females, especially attractive females, off with a 'slap on the tush' rather than the normal sentence he would impose on a male litigant or unattractive female. It is not uncommon for him to flirt with attractive female witnesses during hearings and on the record. His list of Facebook friends is predominantly attractive females, outside of his professional contacts therein.

27. In one of his first cases, Judge Kouris made clear his preference for women. Judge Kouris sentenced 29-year-old female Cameo Patch. Ms. Patch engaging in repeated sexual acts with a minor male over a two month period. She was sentenced to 3 years probation and a $2000 fine. Judge Kouris noted, 'If this was a 29-year-old male and a 17-year-old female, I would be inclined to order some incarceration'.

28. In January 2007, Judge Kouris sentenced 42-year-old female Leslie Baird, accused of repeatedly intoxicating and engaging in sexual acts with two different minor males (separately). Judge Kouris agreed to a plea deal wherein he dismissed two counts of first degree felony sodomy on a child and two class A misdemeanor charges of supplying alcohol to a minor. Ms. Baird was released from prison, having served less than one year. At Sentencing, Judge Kouris noted, 'if [Ms. Baird] were male and the victims female, if we were all quiet, we could hear the prison bus idling out in the parking lot'. Judge Kouris went on to state that Ms. Baird was 'getting quite a deal'.

29. Apparently after these two cases, someone spoke with Judge Kouris, as he seems to have ceased to make these comments on the record, but proceeded in other ways to demonstrate his unfitness for judicial office.

30. In November 2007, Judge Kouris sentenced 26-year-old male Christopher Burton for 'fondling' with 8 minors during classes, over a 7 month period. Judge Mark Kouris said children and parents place a great deal of trust in teachers, saying even life in prison or "executing you" would not undo the damage done to the child victims. Apparently this trust only applies to male teachers and not the two above-mentioned female teachers.

31. Calling Burton's actions "despicable," Kouris sentenced him to eight **consecutive** counts of one to 15 years in prison, the maximum. Because Utah law places a 30 year cap on stacked third and second degree felonies, Burton will serve a mandatory eight years up to 30 years in prison. However, the stacked sentence may have an effect on Burton's chance for parole. Kouris said he planned to **personally** send a letter to the state board of pardons, asking that Burton serve all 30 years behind bars. Judge Kouris network of favors seems to know no bounds, as he is known

for reaching into other state agencies to impose his will.

32. In August 2009, Judge Kouris sentenced male Eric Jones. Judge Kouris punished him not for the act of scalding his child for which he was charged (presumably because the child was male), but because Mr. Jones fled after to avoid prosecution. Judge Kouris stated, 'You probably put that baby in that water by accident, but when men make mistakes, men take responsibility. They are not cowards and run away'.

33. Judge Kouris continued, 'I don't believe you did this on purpose. Parents make mistakes. The problem is what you did after that.'  He went on to say, 'If you had been there up at the hospital every night wondering if this little guy was going to make it, you'd be standing in front of me and I'd say, 'Sir, you made a mistake, but you can walk out that door,' .'

34. Because Mr. Jones fled, Judge Kouris sentenced him to the statutory 'zero to five years' prison, and recommended he serve the maximum prison time. Zero prison time for scalding his child (the crime for which he was charged), but 5 years for fleeing to avoid prosecution (for which he was not charged). It is noteworthy that this case was three years into Judge Kouris term as a judge, so his reputation for punishing male defendants was already well-known and may have factored into Mr. Jones decision to flee.

35. In September 2010, Judge Kouris sentenced 44-year-old male Reginald Campos to the maximum of back to back prison terms of 'zero to five years' and 'three years to life' for his role in the shooting of David Serbeck (Mr. Serbeck was later convicted of sexual abuse of minors).

36. At trial Mr. Campos said he had confronted Mr. Serbeck after Serbeck had been following Mr. Campos' teenage daughter & her three friends through their neighborhood. Mr. Campos stated that Mr. Serbeck had raised a gun towards him, and he fired in self defense. As a result of his wounds, Mr. Serbeck is confined to a wheelchair. Ever the clairvoyant, Judge Kouris called this defense 'pure crap' and noted Mr. Campos lack of contrition in sentencing him to the maximum allowed under law.

37. In 2012, Mr. Serbeck was charged and convicted of sexually abusing several minor girls from the same neighborhood and is currently in prison. This abuse was disclosed mostly due to the media coverage surrounding Mr. Campos actions that night in protecting his daughter & her friends. The Utah Supreme Court overturned Mr. Campos attempted murder conviction, apparently disagreeing with Judge Kouris' 'pure crap' assessment that he acted in self defense. The prosecution refused to bring charges again and entered into a plea agreement with Mr. Campos wherein he was released in 2014, after serving four years in prison.

38. In October 2014, Judge Kouris ordered the criminal record of 42-year-old female Michelle

Glover be expunged. Ms. Glover is a former Utah Department of Corrections therapist who faced charges after allegedly using her position of power to engage in a two-year sexual relationship with a parolee. Ms. Glover no longer works for the Utah Department of Corrections.

39. In November 2014, Judge Kouris spent 9 minutes on the record 'ridiculing, mocking' and berating defense attorney Joan Watt during a routine hearing. The incident led Ms. Watt to file a motion to recuse Judge Kouris for his obvious bias against either her or her client, despite the fact Judge Kouris eventually granted Ms. Watt's motion. Oddly enough, Judge Kouris refused to recuse himself in that case, as well. Because he eventually granted Ms. Watts motion at that hearing, the Utah Court of Appeals, in a divided decision, refused to force Judge Kouris to recuse. Over his career, however, Judge Kouris has become well known to both the Court of Appeals and the Judicial Conduct Commission for his actions both from the bench and behind the scenes.

40. To date, the Judicial Conduct Commission, Appellate Court and Utah Supreme Court have overlooked and/or taken steps to hide Judge Kouris conduct from the public, in an effort to protect the judiciary from seeming bias. In doing so, much like the schoolyard supervisor who covers for the local bully, they have endorsed his abuses and Judge Kouris has realized he can act with even greater impunity in his abuse of judicial authority. Neither Mr. Babbitt nor Mr. Willson have any ties to the legal community in Utah, and yet were easily able to gather the above evidence of his misconduct through the years.

41. Plaintiffs will demonstrate that in the time Judge Kouris has been on the bench, he has made several things clear to litigants, victims, attorneys and defendants. 1. Be of Greek Heritage, or at the very least 2. Be an Attractive Female. Court records show his preference definitely is for those who are both Attractive Females & of Greek Heritage, but one or the other will do.

## FACTS RELEVANT TO MR. BABBITT'S CLAIMS

42. In June 2009, Troy Brown (father) filed a Petition for Paternity in the Utah 3rd District Court with Kelsey Brown (mother) named as Respondent. Commissioner Michelle Tack was assigned. Troy Brown was attempting to get court orders to obtain visitation with the couple's 7 year old minor child. Troy Brown was awarded statutory visitation in the Temporary Orders entered in October 2009.

43. In November 2009, Judge Stephen Roth was assigned the Brown vs Brown case. He was the first judge assigned to this case.

44. In January 2010, Troy Brown & Kelsey Brown settled the outstanding issues in the case during

mediation. Troy Brown received statutory visitation.

45. Also in January 2010, Kelsey Brown filed a divorce/custody action in the 3rd District Court naming Mr. Babbitt as Respondent.

46. In February 2010, Commissioner Tack was assigned the case and presided over a hearing for Temporary orders in March 2010, wherein Mr. Babbitt was awarded statutory visitation with the couple's minor child. In most other divorce/custody case, the Court Commissioner is assigned first and only later is a judge assigned. This was not the case in the Brown vs Babbitt case.

47. On April 6, 2010, Mr. Babbitt filed a Motion for OSC to enforce the visitation schedule ordered by Commissioner Tack three weeks prior, which Ms. Brown had refused to obey. Judge Kouris signed the Temporary Orders on May 13, 2010.

48. Commissioner Tack certified Mr. Babbitt's OSC for evidentiary hearing on May 19, 2010.

49. On June 8, 2010, Kelsey Brown notified Mr. Babbitt she would be relocating with her parents to Phoenix, AZ on July 1 in an unplanned move required by her father's employer, Delta Airlines. On this same day, Mr. Babbitt filed a second Motion for OSC to again enforce the Temporary Orders which Ms. Brown continued to violate despite the prior OSC certification.

50. In response to Ms. Brown's notice of a move more than 150 miles, Mr. Babbitt filed a Motion for Temporary Restraining Order on June 14, 2010 in accordance with Utah Statute 30-3-37(2) which requires a relocating parent to provide 60 days notice of a move to allow the court to determine the best interests of the child in making such a move.

51. On June 16, 2010, Judge Kouris denied Mr. Babbitt's Motion for Temporary Restraining Order, refusing to enforce Utah Statute 30-3-37(2). In explanation of his decision, Judge Kouris stated that Ms. Brown had a constitutionally protected right to live anywhere she wished. However, he completely ignored Mr. Babbitt's constitutionally protected rights as a parent.

52. Ms. Brown moved to Phoenix AZ on July 6 with Mr. Babbitt's minor child and her child with Mr. Troy Brown.

53. On July 14, 2010, Commissioner Tack certified Mr. Babbitt's Motion for OSC for evidentiary hearing.

54. Ms. Brown moved back to Utah on or about August 3, 2010 and took up residence with her sister in Layton, Utah, accompanied by both Mr. Brown's and Mr. Babbitt's minor children.

55. In August 2010, Troy Brown filed a Temporary Restraining Order in the 3rd District Court trying to enforce the January settlement he had reached with Kelsey Brown. Ms. Brown had informed him she was moving their child to Arizona with her, in an effort to deny Mr. Babbitt access to his child. Judge Kouris was assigned to that Temporary Restraining Order despite Judge Roth

presiding over the case, and was the second judge to preside in that case. Again, upon information and belief, Judge Kouris obtained this assignment through the back channel network he utilizes to perform favors for litigants.

56. Judge Kouris granted Troy Brown's Temporary Restraining Order Petition based solely on Mr. Brown's testimony that Kelsey Brown had told him she was leaving the state to keep Mr. Babbitt from Mr. Babbitt's child. He argued 'why should he be denied visitation with his daughter, simply because Ms. Brown wanted to keep Mr. Babbitt from Mr. Babbitt's daughter'. This TRO kept Kelsey Brown and both daughters in the State of Utah, pending a formal hearing or the outcome of mediation between the Browns.

57. Six days later, Mr. Babbitt submitted a Temporary Restraining Order to Judge Kouris alleging the same facts outlined in Troy Brown's Temporary Restraining Order. However, given the same set of facts, Judge Kouris again declined to grant the Temporary Restraining Order or even hold a Temporary Restraining Order hearing for Mr. Babbitt. Taking this opportunity, Kelsey Brown gave custody of her older child to Troy Brown, and left the state of Utah with Mr. Babbitt's child.

58. In September 2010, Judge Stephen Roth, presiding judge in the Brown vs Brown case, signed the Stipulation to modify Child Custody that was agreed to in order for Judge Kouris to lift the Temporary Restraining Order in the Brown vs Brown case. Parties were to share all costs equally, but Kelsey Brown was not ordered to pay any child support, not even the Utah State minimum required by statute 78B-12-105(1) .

59. Immediately following the entry of that order, Judge McCleve was assigned the Brown vs Brown case. He was the third judge assigned in that case.

60. On September 29, 2010, all parties & witnesses were present for the evidentiary hearing on both of Mr. Babbitt's certified Motions for OSC before Judge Kouris. At the appointed time, Judge Kouris refused to enter the courtroom and called both parties' counsel to chambers. In chambers, Judge Kouris refused to hold the evidentiary hearing and instead appointed retired Judge Livingston as Special Master in the case. This was done over objections by Mr. Babbitt's counsel and without contacting Judge Livingston.

61. It was made clear that Mr. Babbitt was not to file any more Motions for OSC as Judge Kouris would not hear them. Mr. Babbitt had been refused and denied any legal means by which he could get the Court Orders enforced. Subsequent to this, Mr. Babbitt was not able to see his child again until January 2012 (except for 6 hours during the custody evaluation in Nov 2010). Mr. Babbitt was unable to see his child for 18 months and Judge Kouris had removed any legal

means for Mr. Babbitt to address this injustice.

62. During the 18 month period of no contact with his child, Mr. Babbitt made repeated and ongoing attempts to reach Judge Livingston to secure his involvement in the case, at one point even calling Judge Livingston on his cell phone while the Judge was golfing in St. George, UT. Judge Livingston was livid and within weeks of this exchange finally wrote a letter to the court asking that the parties stop bothering him as he was unwilling to be a Special Master for the parties.

63. In November 2010, Mr. Babbitt was able to spend a few hours with his child in the course of Dr. Hale's custody evaluation process. This was the first time he had seen his daughter in several months. She appeared quite small to Mr. Babbitt so he took her to a pediatrician in Saratoga Springs (the only one available to see the child on short notice).

64. The pediatrician retrieved the child's records from IHC and determined that she was last seen at 4 months and was in the 55% for weight. Over the past six months, her weight had dropped to the 5%, which endangered her health, due to Ms. Browns refusal to meet her nutritional needs.

65. Mr. Babbitt immediately filed a Motion for Temporary Restraining Order to obtain custody of the child and get proper medical care for her in regards to her nutritional needs, and to obtain pediatrician recommended vaccinations, and other medical treatments. Ms. Brown filed her own Motion for Temporary Restraining Order that Mr. Babbitt not be allowed to take the child to the doctor.

66. On November 17, 2010, Judge Kouris again denied Mr. Babbitt's Temporary Restraining Order, putting the child in immediate danger. He did, however, grant Ms. Brown's Temporary Restraining Order and ordered Mr. Babbitt could only take the child to the doctor in an emergency. Judge Kouris refused to believe that a drop in weight that could have required hospitalization was an emergency. Judge Kouris again made it clear that Mr. Babbitt would not have a legal means available to him and would continue to side with Ms. Brown, even to the detriment of his primary charge, the minor child.

67. In December 2010, Judge Andrew Stone was assigned the Brown vs Brown case. He was the fourth judge assigned in that case.

68. Mr. Babbitt later learned that during 2011, Ms. Brown continued an affair with her brother in law, which had begun when she moved into his home in August 2010. Ms. Brown became pregnant with his child and in August 2011 flew to North Carolina (where he had relocated with Ms. Browns sister) to return to their household as a 'sister wife'. Ms. Brown's sister refused this arrangement, so Ms. Brown returned to her parent's home in Arizona and aborted the child.

69. In November 2011, the parties in the Brown vs Babbitt case held a 4-903 conference with Commissioner Tack & Dr. Valerie Hale. This was to be the last custody evaluation Dr. Hale ever performed. In this 4-903 conference, Dr. Hale alleged that Mr. Babbitt was a sociopath, despite not testing for this, not being qualified to make this diagnosis and not being charged by the court to perform any other function but a custody evaluation. It was Dr. Hale's recommendation, Ms. Brown be awarded custody of the parties' minor child. Upon information & belief, Dr. Hale had been contacted by Judge Kouris through his own network to endorse Ms. Brown over Mr. Babbitt, as Dr. Hale was unable to meet the statutory guidelines for making such a recommendation and therefore she invented reasons and created a false narrative.

70. At this conference, Dr. Hale recommended that Mr. Babbitt obtain Domestic Violence counseling (despite the only recorded domestic violence being when Ms. Brown assaulted Mr. Babbitt and was removed from the couples home), attend parenting classes and begin therapy to address his sociopathic tendencies. Ms. Brown as also encouraged to obtain counseling to deal with her extreme anxiety and failure to launch.

71. At this point, Mr. Babbitt had nothing left available to him legally to address the injustices. Therefore, he decided to begin making a record. However, he enrolled in and completed two parenting classes and intensive domestic violence therapy. He also began counseling in accordance with Dr. Hale's recommendations and continued in that therapy for the next year until the trial commenced. Therefore, he completed all of Dr. Hale's recommendations, in order to see his minor child.

72. In December 2011, Mr. Babbitt filed a third motion for OSC for the denied visitation over the last 18 months and to enforce, at a minimum, the parent time Dr. Hale did endorse in the 4-903 conference. Immediately after filing this, Ms. Brown finally relented and allowed visitation to take place. Because of the age of the child (2 years) and the time Mr. Babbitt had been kept from her (18 months), reunification was to begin in a supervised setting.

73. In February 2012, Commissioner Tack again certified Mr. Babbitt's contempt action and allowed the parties to approach former Commissioner Lisa Jones to act as Special Master, due to Judge Livingston's refusal. However, Lisa Jones was not taking new clients and the parties were again left without a Special Master.

74. Subsequent to this certification, Judge Kouris refused again to schedule an evidentiary hearing and informed the parties he would include the evidentiary hearing as part of the trial in this matter. That trial happened 10 months later in December 2012.

75. In May 2012, Mr. Babbitt was finally able to get visitation with his child in Utah, having had 3

months of reunification visits. At this visitation (which began at 3pm), he attempted to enforce the Temporary Orders and notified the supervisory agency that he expected them to follow the court order and allow him to have his weekend visitation starting at 6pm. In response to this, the supervisors ended the visit at 5:30pm, so that the child would be gone before the court ordered parent time began.

76. In August 2012, Judge Su Chon was assigned the Brown vs Brown case. He was the sixth judge assigned in that case.

77. On October 2, 2012, Ms. Brown claimed to Judge Kouris that Mr. Babbitt attempted to kidnap the child from the supervisory agency during the May visit above. Without evidence, testimony of any witness and despite Mr. Babbitt's denial of said allegations, Judge Kouris believed only Ms. Brown and ordered an off-duty police officer to be present at all of Mr. Babbitt's visits until trial, at Mr. Babbitt's expense. This assertion by Ms. Brown was later refuted by direct testimony at trial by the owner of the supervision agency who testified at trial.

78. In November 2012, Judge Barry Lawrence was assigned the Brown vs. Brown case.

79. In December 2012, a two day trial was held in the Brown vs Babbitt matter. Ms. Brown testified on her own behalf and Dr. Hale testified in support of her recommendation that Ms. Brown be awarded custody. Ms. Brown was questioned as to where she actually lived, as she continued to assert residence with her parents in Arizona. However, evidence was presented which showed she had abandoned the couples minor child in Arizona while she took up residence with her brother in law in North Carolina. Subsequent to learning of the affair with Ms. Brown, Ms. Brown's sister had left her husband and moved back to Utah. Ms. Brown took this opportunity to move back to North Carolina and take up residence in her sister's marital home. Furthermore, Ms. Brown presented the court with a Utah Driver's license during the December trial, despite bank records entered into evidence showing she was writing checks in North Carolina with an Arizona driver's license. It was made clear that the court had no idea as to the actual location of the parties minor child, in direct violation of Utah statute 30-3-36(2) & 78B-15-108 . Neither Ms. Brown's parents or brother in law could be called as they resided outside the subpoena powers of the State of Utah. It was made clear that the court had no idea as to the actual location of the minor child and Judge Kouris rejected all of Mr. Babbitt's attempts to locate his daughter.

80. Dr. Hale entered a recommendation that Mr. Babbitt's visitation be supervised for the foreseeable future due to her assertion he was a sociopath. However, Dr. Hale never tested Mr. Babbitt for a personality disorder (such as sociopathy) as she was unqualified to do so.

Additionally, she provided no evidence to support this assertion or evidence that Mr. Babbitt was ever or may ever be a danger to the child. At no time was any evidence or testimony entered that adhered to Utah Statute 30-3-36(1) governing the instances in which supervised visitation was required and/or advised. In fact, at trial, Mr. Babbitt's therapist and other qualified parties disputed this diagnosis, and in fact, all other evidence & testimony stated Mr. Babbitt was a good parent.

81. Mr. Babbitt called witnesses to testify he had completed the parenting classes and the domestic violence therapy Dr. Hale had recommended, and was a good parent. Further witnesses were called who directly refuted statements Dr. Hale had attributed to them within her custody evaluation, to support awarding Ms. Brown custody. Ms. Brown's own family members testified regarding Ms. Brown's prior perjury to the court, as well as false statements Dr. Hale attributed to them in her evaluation. Mr. Babbitt's therapist also testified that several paragraphs which Dr. Hale had attributed to her, were blatantly false. Mr. Babbitt's therapist, Michelle Moyes, PhD refuted Dr. Hale's assertion that Mr. Babbitt was a sociopath and had spent the prior year in bi-weekly therapy with him as a basis for that assertion. Dr. Hale's response was that Mr. Babbitt should acquire a new therapist.

82. It was also made clear that Dr. Hale had completely ignored Mr. Babbitt's family & witnesses in preparing her custody evaluation, mainly by refusing to communicate with them. Instead she relied solely on Ms. Brown's assertions and Ms. Brown's witnesses who asserted Ms. Brown should be awarded custody. The custody evaluation was obviously one-sided, which is one of the reasons Dr. Hale no longer performs custody evaluations for any court in the state of Utah.

83. Subsequent to trial, Ms. Brown again refused any and all visitation for Mr. Babbitt & the minor child. Mr. Babbitt had been able to visit with his child in January -- May 2012, and June – November 2012. After the November 2012 visit, Mr. Babbitt was unable to obtain visitation with his child again until September 2013, another violation of the court orders by Ms. Brown.

84. In February 2013, Judge Kouris entered his 'Findings of Fact & Conclusions of Law and Order' in which it was made clear he had no recollection of the two day trial and if he did, he ignored all the evidence and every witness. Instead, the Findings and Order relied solely on Dr. Hale's custody evaluation which had been completed 18 months prior totrial, and was contradicted by Dr. Hale's trial testimony. His Findings & Order directly opposed Dr. Hale's trial testimony, mischaracterized the evidence and testimony at trial and was a completely fictional document based entirely on an outdated custody evaluation which Dr. Hale herself changed on the stand.

85. Specifically, as it relates to the three certified Motions for Orders to Show Cause against Ms.

Brown, which were heard as part of the trial, Judge Kouris instead found both parties in contempt, which offset each other. However, no party nor the court has at any time asked that Mr. Babbitt be held in contempt. To this date, there is no explanation from the court as to how Mr. Babbitt was in contempt. Mr. Babbitt's imaginary contempt was used to offset the years of contempt Ms. Brown had perpetrated. Ms. Brown was not sanctioned as it was stated Mr. Babbitt's contempt offset her own.

86. In the section of the Findings & Order spelling out visitation, Mr. Babbitt's visitation was made contingent on him being current on child support and not missing any visitation. Were he to miss any visitation or fall behind on child support, he could lose future visitation.

87. Mr. Babbitt was ordered to complete parenting classes and domestic violence classes, despite witnesses testifying he had completed those the prior year, at Dr. Hale's recommendation.

88. Mr. Babbitt was ordered to begin therapy with a new therapist since his own therapist did not agree with Dr. Hale's diagnosis of sociopathy. Six names were listed and he was required to obtain counseling only from them. But as with Judge Livingston, none of those parties were contacted prior to the order. One was retired, two were not taking new patients, and the fourth requires an actual positive test for sociopathy before agreeing to therapy. The remaining two work together and refused to provide therapy after reading the court order's requirements. All therapists agreed the court order was impossible for both Mr. Babbitt & themselves to comply with as it asked them to guarantee future behavior before they could release Mr. Babbitt from therapy. They would lose their professional license if they were to adhere to the court's order. In fact, every therapist Mr. Babbitt has contacted agreed no one could adhere to the court's therapy order without losing their license. So in his best efforts to comply with an impossible order, Mr. Babbitt obtained a full psychological evaluation from another qualified psychologist, while continuing sessions with the therapist who testified at trial. Dr. Julia Jacobs, PhD, who specializes in psychological evaluations for the Utah Courts, performed an extensive psychological evaluation on Mr. Babbitt and determined he was 'normal' and did not require the therapy the court had ordered. Mr. Babbitt's therapist agreed with Dr. Jacobs' diagnosis, and it was identical to what she had testified to at trial.

89. Furthermore, Judge Kouris ordered all visitation to be supervised, despite not meeting the statutory requirements governing when supervision should be ordered. Specifically, there had never been any evidence which suggested Mr. Babbitt had been or would ever be a danger to the minor child.

90. Judge Kouris ordered Mr. Babbitt to complete parenting classes with Primary Children's

hospital, which at the time did not offer parenting classes.

91. Judge Kouris ordered that Mr. Babbitt's relationship status with his girlfriend, as well as his living arrangement with her, remain unchanged as part of the court order, as well.

92. Judge Kouris ordered Mr. Babbitt not call his daughter by any other name than her legal name, despite zero evidence or testimony that Mr. Babbitt had ever attempted or done so.

93. Judge Kouris ordered that neither party was allowed to make any unsubstantiated claims of abuse to Child Protective Services and went so far as to claim Mr. Babbitt had done so during the two day trial in December. This had not happened and was never claimed by either party.

94. Judge Kouris ordered that Mr. Babbitt be listed as the minor child's father on all school & medical records. This had originally been ordered since March 2010 in the temporary orders, yet Judge Kouris has never enforced it in the five years since then. Presently, the parties minor child is told her Uncle is her biological father, and he is listed as her father on both school & medical records, as Ms. Brown has no fear of ever being held to this standard by Judge Kouris.

95. Judge Kouris ordered Ms. Brown to obtain therapy for her extreme anxiety and failure to launch, but to date has refused all efforts to enforce this order. Had Ms. Brown actually completed this therapy, this case would be much, much simpler for all parties. Judge Kouris' failure to enforce his own order has also proven detrimental to the minor child, as she is now told her Uncle (Ms. Brown's former brother in law, who she subsequently married after her sister discovered the affair) is her biological father and Mr. Babbitt is not related to her. The minor child is being raised with her older cousin, who she is required to refer to as her brother. Troy Brown's daughter is also required to call her Uncle 'Dad' and refer to her cousin as her brother, when visiting Ms. Brown.

96. Judge Kouris also found that substance abuse was not a factor for either parent, despite extensive evidence & testimony at trial of alcohol abuse by Ms. Brown that extended back into her teen years and continued on until a DUI conviction during the custody evaluation.

97. Judge Kouris included an order regarding Mr. Babbitt's girlfriend, whom he had actually married prior to trial. Yet Judge Kouris is seemingly unaware of this fact despite both she & Mr. Babbitt testifying at trial they were married, and her being recorded in the docket as Mrs. Babbitt. Yet after the trial, Judge Kouris ordered Ms. Brown not have any contact with "Mr. Babbitt's girlfriend's workplace or ex-husband" (because Ms. Brown had made attempts to get Mr. Babbitt's wife fired). Additionally, the ex-husband of Mr. Babbitt's wife sexually abused two of his daughters, and Ms. Brown had been ordered to keep the minor child away from this man. Here again Ms. Brown continues to allow the minor child to be in his company. To date,

Judge Kouris has refused to enforce either of these orders, leaving the minor child in the company of a known sexual predator.

98. Judge Kouris also ordered both parties complete all paperwork necessary to comply with the orders therein, in accordance with Rule 70 of the Utah Rules of Civil Procedure. Again, Judge Kouris has refused to ever enforce this provision of the order, meaning Mr. Babbitt cannot get access to the minor child's school or medical records. Ms. Brown continues to list her current husband, the child's uncle, as the father on these forms, making them unavailable to Mr. Babbitt.

99. Judge Kouris signed this order on April 17, 2013, despite objections that the order did not reflect anything that occurred at trial. Mr. Babbitt therefore filed a Rule 52B motion to reconsider the order and correct the mistakes or oversights so that the order would reflect the evidence & testimony presented at trial, as well as adhere to Utah Statutes 30-3-34, 30-3-34.5 & 30-3-37.

100.    On April 29, 2013, Commissioner Tack certified yet another Motion for OSC Mr. Babbitt had filed to enforce visitation which had been denied by Ms. Brown since November 2012. This was the 4th OSC filed in the case, all by Mr. Babbitt, all certified.

101.    On April 30, 2013, Judge Kouris stayed the Final Order he signed April 17, pending a hearing scheduled on June 17, 2013 concerning Mr. Babbitt's Rule 52b motion.

102.    On June 17, 2013, Judge Kouris presided over this Rule 52b and evidentiary hearing. Judge Kouris refused to find Ms. Brown guilty of any contempt, despite the fact Ms. Brown was still denying Mr. Babbitt visitation with his daughter. Next, Judge Kouris denied the Rule 52b motion after he refused to allow Mr. Babbitt to present evidence or testimony during the hearing. Judge Kouris threatened Mr. Babbitt's attorney with sanctions if he continued to attempt to introduce evidence. Judge Kouris has become well-known for refusing to allow parties to make a record for appeal, so Mr. Babbitt's attorney preserved this right on the record and noted Judge Kouris refusal to allow evidence to be introduced. Mr. Babbitt subsequently filed his first appeal of the Final Order. That appeal is still pending.

103.    On June 27, 2013, Commissioner Tack was to hear Mr. Babbitt's 5th Motion for OSC for the denied visitation and other matters. However, during the June 17 hearing, Judge Kouris incorrectly stated the order in effect at the time the Motion for OSC was filed, requiring this motion to be withdrawn and redrafted to address the violations of an older order.

104.    On August 5, 2013, Mr. Babbitt filed his first Motion to Disqualify Judge Kouris, due to Judge Kouris constant and repeated refusal to obey and enforce state law. The bias was clear

and ample throughout the record.

105.    On August 7, 2013, Judge Kouris entered a ruling on Mr. Babbitt's Motion to Disqualify, in violation of state law. State law allows a judge to either A. Immediately Recuse or B. Hand the motion to an impartial third party judge for review and decision. Instead, Judge Kouris entered his own ruling that he refused to recuse.

106.    On August 21, Judge Himonas signed an order endorsing Judge Kouris' August 7 order refusing to recuse. Judge Himonas never reviewed the motion, but instead ruled on Judge Kouris ruling. This is a clear violation of state law, and upon information and belief, Judge Kouris regularly calls on Judge Himonas to cover his violations of statute. Judge Himonas is a personal friend of Judge Kouris and attends the same church, and as such has a conflict of interest in matters concerning Judge Kouris. Another judge should have reviewed the motion in accordance with Canon 2.7 of the Utah Code of Judicial Conduct.

107.    On December 11, 2013, Commissioner Tack certified Mr. Babbitt's 6th Motion for OSC and ordered all visitation to take place in Utah since it was apparent to the court that Ms. Brown no longer lived in Arizona as she had claimed during trial the prior year.

108.    In December 2013, Mr. Babbitt filed a complaint with the Utah Judicial Conduct Commission against Judge Kouris for the above-mentioned acts. Mr. Babbitt was informed during one of his calls to the JCC that there were at least 10 other complaints pending against Judge Kouris with the JCC for similar conduct. Mr. Babbitt disclosed this statement to Colin Winchester, Executive Director of the Judicial Conduct Commission, during a subsequent email exchange.

109.    Mr. Winchester asked who the party was that had made this disclosure to Mr. Babbitt, but Mr. Babbitt refused. Mr. Winchester then demanded Mr. Babbitt disclose the party and again Mr. Babbitt refused, not wanting to get anyone in trouble. Subsequently, Mr. Winchester disclosed to Mr. Babbitt that he had conducted an internal investigation into who told Mr. Babbitt about the other complaints and was unable to determine the source. Obviously Mr. Winchester is unaware that both by demanding the disclosure and by conducting the subsequent investigation, he himself corroborated that other complaints exist. We will be subpoenaing these complaints as part of discovery in this case. Utah Judicial Conduct Commission rules do not allow these to be disclosed but the JCC must comply with a Federal subpoena. Upon information & belief, several attorney's have also asked not to have to appear before Judge Kouris in the future, and we will be subpoenaing these requests as well, in support of the allegations contained herein.

110.     On January 10, 2014, Mr. Babbitt filed his 4th Motion for Temporary Restraining Order to enforce Commissioner Tacks order from December 2013 that all visitation occur in Utah. Ms. Brown continued to insist it occur in Arizona, despite the fact she was flying in from North Carolina.

111.     On January 16, 2014, Judge Kouris refused to sign the Temporary Restraining Order enforcing Commissioner Tack's prior order.

112.     Around this time, at least five private attorneys and at least one other officer of the court employed by the State of Utah met in secret to discuss Judge Kouris increasingly bizarre behavior, malicious prosecution and inexcusable conduct from the bench. It was determined collectively that they would be best advised to do nothing, as Judge Kouris had created such a network of favors that any attempts they made to report him would result only in permanent damage to their careers and possible sanctions to them instead. Even accomplished and well-respected members of the legal community are fearful of Judge Kouris and his retribution. Collectively they agreed that Judge Kouris had no oversight from any of the governing bodies charged with governing his actions, and it would be professional suicide to attempt any of the remedies available to them. Judge Kouris' abuses and his network of favors are so well-known that even Mr. Babbitt & Mr. Willson are able to discover their existence with ease.

113.     Now Judge Kouris is even more confident since Judge Himonas, his personal friend & fellow church member, has been appointed to the Supreme Court. The Utah Supreme Court is charged with overseeing the entire Utah Judiciary. Judge Himonas protected Judge Kouris while on the Judicial Conduct Commission and can now protect him better with his promotion to the Supreme Court. We will be subpoenaing all the records wherein Judge Kouris referred issues to Judge Himonas, as it appears that he was the only Judge used by Judge Kouris, instead of the 70 other District Court judges available, let alone the 4 other judges in his courthouse.

114.     On February 3, 2014, Mr. Babbitt filed a Pro Se Motion to Disqualify Judge Kouris, based on his ample examples of bias and refusal to enforce the orders of his court and state law.

115.     On February 4, 2014, Commissioner Tack certified Mr. Babbitt's 7th Motion for OSC and ordered visitation to advance. Commissioner Tack noted that Ms. Brown had lived in North Carolina since before the December 2012 trial. Furthermore, visitation was to adhere to Utah Statute 30-3-37 beginning in January 2015 when the minor child turned 5 years old and that statute would apply for the first time.

116.     Also on February 4, 2014, Judge Kouris entered his ruling on Mr. Babbitt's 2nd Motion to Recuse, denying it.

117. On February 5, 2014, Judge Himonas ruled on Judge Kouris' order from the prior day, making it once again absolutely obvious that he did not conduct his own review of the motion and merely 'rubber stamped' Judge Kouris ruling again. Judge Himonas is a personal friend of Judge Kouris and attends the same church, and as such has a conflict of interest in matters concerning Judge Kouris.

118. On February 28, 2014, Mr. Babbitt filed his 5th Motion for Temporary Restraining Order to enforce Commissioner Tack's February 4 ruling that visitation advance. Judge Kouris heard the matter that day on a telephone conference with both parties' counsel and again refused to sign the Temporary Restraining Order enforcing his own court's orders.

119. On March 13, 2014, Commissioner Tack certified Mr. Babbitt's 8th Motion for OSC for Ms. Brown's willful and intentional refusal to allow parent time.

120. On April 17, 2014, Judge Kouris finally presided over an evidentiary hearing for Mr. Babbitt's three certified Motions for OSC filed since September 2013. When Mr. Babbitt took the stand, Judge Kouris became very adversarial and frequently interrupted Mr. Babbitt in an effort to prevent him from making a record. At one point, Judge Kouris threatened Mr. Babbitt if Mr. Babbitt did not answer the questions in a manner approved by Judge Kouris. At another point, Judge Kouris interrupted and caused Mr. Babbitt to forget the question. When Mr. Babbitt stated he did not remember the question Judge Kouris threatened to sanction Mr. Babbitt again, stating Mr. Babbitt DID remember the question. Thankfully, opposing counsel had also forgotten his own question while watching Judge Kouris' tirade, and intervened to volunteer to reread the question before Judge Kouris had an opportunity fulfill his threat.

121. Again, Judge Kouris refused to enforce the orders of his court. On matters for which there was documentation and no other way around it, Ms. Brown was held in contempt. However, the sanctions for that contempt was immediately stayed. In all other matters, Judge Kouris chalked the matter up to a 'failure of the parties to communicate' despite the fact the case was over 4 years old and both parties counsel & the Commissioner had been involved regularly. Judge Kouris appointed another Special Master to facilitate communication and signed all of Commissioner Tack's orders, including the one returning visitation to Utah Statute 30-3-37 in January 2015.

122. Special Master Orson West was appointed by Judge Kouris on June 10, 2015. Mr. West immediately began advancing parent time to move toward the court order of 30-3-37 visitation in January 2015.

123. On June 18, 2014, Mr. Babbitt filed his 9th Motion for OSC due to Ms. Browns

continued refusals to adhere to the parent time orders and other matters.

124.     In July 2014, Troy Brown filed a Motion for OSC in the Brown vs Brown case due to Kelsey Brown's refusal to pay her court ordered half of the health insurance premiums, medical expenses for their minor child, and her violation of the order in claiming the minor child on her taxes for 2011, 2012 & 2013. This OSC was certified for evidentiary hearing in August 2014 by Commissioner Tack.

125.     On July 17, 2014, Mr. Babbitt filed his 10th Motion for OSC due to Ms. Browns continued refusals to adhere to the parent time orders and other matters.

126.     On August 13, 2014, Judge Kouris presided over a Petition to Modify hearing based on Ms. Brown's perjury during trial and subsequent actions. At not time was the minor child's lactose intolerance (or lack thereof) or the current parent time order before the court. The only matter before the court was a change in custody based on Ms. Browns perjury & visitation refusals. No other matters were addressed at this hearing and no other evidence or testimony was offered. The hearing covered only the Petition to Modify based on Ms. Brown's perjury.

127.     On August 25, 2014, Commissioner Tack presided over the latest Motion for OSC filings by Mr. Babbitt but refused to certify anything until such time as Judge Kouris clarified whether she or Mr. West, in his capacity as Special Master, could certify the matters.

128.     On September 26, 2014, Mr. West had to threaten contempt to get Ms. Brown to adhere to his parent time orders of 4 days of visitation that weekend, as visitation was advancing toward normal visits a few months hence. Reluctantly, Ms. Brown agreed to allow visitation but still refused the time ordered.

129.     On October 7, Mr. West entered his October parent time order, limiting the parent time for October to 6 hours per Judge Kouris Memorandum Decision on the August 13 hearing, filed surreptitiously on September 17. Judge Kouris did not use the GreenFile system, so neither counsel nor the Special Master was notified. Had the Special Master not found the Sept 17 order and included it in his October parent time order, neither party would have known about it and the time allotted to file a Notice of Appeal would have passed.

130.     Without sending notice to either counsel or the Special Master, Judge Kouris entered his "Memorandum Decision" three weeks prior (on September 17). At the very end of his Memorandum Decision, Judge Kouris entered additional findings and ruling on issues not properly before the court under a heading entitled "Other Issues". Under this "Other Issues" heading he modified his April 17, 2014 parent time order, without a hearing or receipt of any testimony or evidence. Neither party had been given notice that these matters were to be ruled

upon by the court, as they had already been resolved in April. Judge Kouris entered his ruling on the August 13 hearing, but failed to notify anyone. Neither Ms. Brown's nor Mr. Babbitt's counsel, nor the Special Master Mr. West, had any notice that Judge Kouris had entered an order reducing the visitation length to six hour visits, restricted to on-site only. Had the attorney's been notified of the new order, the September 26-29 visit would not have been 4 days long. No one knew Judge Kouris had filed a new order and the Special Master stumbled on it three weeks after entry, when looking up something else.

131.     Upon information and belief, this was an intentional act by Judge Kouris to deny Mr. Babbitt his legal recourse of appealing such an order. Had it not been for Mr. West's October 7 order, neither parties' counsel would have been aware of Judge Kouris ruling on the Petition to Modify. Judge Kouris was aware that Mr. Babbitt had appealed the Final Order from the trial and was trying to avoid yet another appeal in the same case at the same time. Alas, thanks to Mr. West, he failed in his attempt.

132.     Judge Kouris denied Mr. Babbitt's Petition to Modify by again completely disregarding all evidence presented and ruling in favor of Ms. Brown yet again. In fact, review of the record shows Judge Kouris will ONLY rule in favor of Ms. Brown. Judge Kouris has begun punishing Mr. Babbitt instead, despite Mr. Babbitt never disobeying a court order and being in compliance with the court at all times. To date no party, including the court of it's own motion, has ever asked that Mr. Babbitt be held in contempt. Every supervisory agency has agreed Mr. Babbitt has always complied with them and Mr. West agrees Mr. Babbitt has completely complied with the court order. Yet Mr. Babbitt is now the only one being punished by Judge Kouris, while at the same time Ms. Brown's refusals to obey the court order remain unchanged but are excused and over looked.

133.     At the end of his Memorandum Decision on the August 13, 2014 Petition to Modify hearing, under the heading 'Other Issues', Judge Kouris changes the April 17, 2014 order advancing parent time to 30-3-37. He restricts it beyond what even Dr. Hale recommended in her flawed custody evaluation. He ordered that visitation be only 6 hours, supervised, on-site at the supervision offices only and no more than two weekends per month. Prior to this order, Mr. Babbitt had visitation Friday through Sunday in anticipation of normalized visitation three months hence. Next, Judge Kouris ordered that this visitation schedule would not change until such time as Mr. Babbitt completed counseling with one of the six psychologists previously ordered, all of whom had refused and stated they could not comply with the order of the court without losing their licenses. So Judge Kouris created an order impossible to obey, based on an

order already under appeal with the Utah Court of Appeals. The matter of visitation was never before the court at this hearing and in fact, had already been resolved by the April 17, 2014 order Judge Kouris signed.

134.     Furthermore, Judge Kouris ordered that the minor child would not be tested for lactose intolerance, despite no less than 5 physicians previously testing and stating she is not lactose intolerant, until such time as the minor child is 10 years old. The matter of lactose intolerance had already been addressed in prior orders as well and was not before the court.

135.     This September 17, 2014 order proves also that Judge Kouris was made aware of Mr. Babbitt's complaint to the Judicial Conduct Commission at the beginning of the year, and Judge Kouris was now acting to punish Mr. Babbitt for reporting the Judge's misconduct. His refusal to grant the Petition to Modify misstates Dr. Hale's testimony and assumes facts not in evidence. Yet Judge Kouris again demonstrates the clairvoyance he regularly brings to his decisions, without any regard for statute or the minor child.

136.     On October 6, before Judge Kouris' September 17 order was discovered, Ms. Brown asked the minor child's therapist to also send Mr. West a letter, which recommended limiting parent time and was incredibly similar to Judge Kouris September 17 order. Upon information & belief, Judge Kouris received and accepted Ex Parte communication from Ms. Brown, which was the reason he included specific visitation scheduled in the 'Other Issues' section of his September 17 order. This Ex Parte communication incorporated into the order of the court, and Judge Kouris' refusal to duly notify all attorney's so the order could be appealed, demonstrate extreme prejudice and malfeasance on the part of Judge Kouris.

137.     Because the minor child's North Carolina therapist was acting in a dual role (contrary to both Utah & North Carolina statutes) and refused to withdraw the parent time recommendation she made to both Judge Kouris and Special Master Mr. West, Mr. Babbitt was forced to file a malpractice action against her within the Utah Courts. Subsequent to filing that action, Mr. West changed his visitation order to comply with Judge Kouris September 17, 2014 order.

138.     On December 12, 2014, Mr. Babbitt filed his 6th Motion for Temporary Restraining Order to enforce the court's order that Mr. Babbitt have Christmas parent time with the minor child. Once more, Judge Kouris refused to enforce the orders of his court and refused to sign. Mr. Babbitt had no Christmas parent time due to Ms. Brown's refusal to comply with the court order.

139.     On February 9, 2015, Judge Kouris presided over a motion hearing requested by Commissioner Tack on August 25, 2014 to clarify if she or Mr. West should certify Motions for

OSC. At that hearing, Judge Kouris made it clear the Special Master has no authority other than to certify items he wishes, and cannot sanction Ms. Brown in any way. If Mr. West fails to certify a matter, Commissioner Tack may decide the matter.

140.    At that hearing, counsel for Mr. Babbitt informed Judge Kouris that an appeal had begun on the September 17, 2014 order, and asked to schedule a hearing on the matters which Judge Kouris had improperly entered rulings. Judge Kouris chuckled and stated 'let's wait and see what the Court of Appeals does'. Supremely confident that either Judge Himonas will intervene again on his behalf or the parties will bankrupt themselves navigating his legal obstacle course & house of mirrors.

141.    At the end of the hearing, Judge Kouris began to order that he would be keeping the Babbitt case (as well as three others) after his transfer to Matheson Courthouse in downtown Salt Lake City, but then stopped himself and stated 'that is up to the Presiding Judge'. This showed his intention to continue to stalk Mr. Babbitt, even though there are no open matters in the Brown vs Babbitt case.

142.    On February 13, 2015, Judge Douglas Hogan was assigned to the Brown vs Babbitt case.

143.    In February 2015, Judge James Gardner was assigned the Brown vs Brown case. He is the seventh Judge assigned to this case since November 2009.

144.    On March 4, 2014, Commissioner Tack presided over a motion hearing brought by the Special Master. She confirmed that the electronic court records all show Judge Hogan as the judge assigned the Brown vs Babbitt case, but acknowledged receiving a letter from Judge Kouris that morning stating he still had the case, as well as 3 others. On the record, Commissioner Tack informed the parties 'I have no idea how you find out who your judge is'. One of these other cases is Plaintiff Mr. Willson. The other two cases have parties which are likely to join this Civil Rights action.

145.    Furthermore, Commissioner Tack stated she did not believe she could 'interpret or modify' the September 17, 2014 order from Judge Kouris. Judge Kouris has effectively hamstrung both the Special Master and Court Commissioner, while at the same time he continues to enter impossible orders based on prior orders under appeal. It now is clear that every time the parties appear before Judge Kouris, the resulting order will require an appeal, further impoverishing both parties and delaying justice.

146.    On March 9, 2015, Mr. Babbitt filed his 11th Motion for OSC in the Brown vs. Babbitt case. This was 37 pages and cataloged over 20 violations of the orders of the court, since Judge

Kouris has made it absolutely clear over the past 5 years that Ms. Brown can operate without regard for any court order. Mr. Babbitt continues to make his record, fearful Judge Kouris will continue punishing him and entering illegal orders to which only Mr. Babbitt must adhere.

147.    On March 19, 2015, the docket was printed in the Brown vs Babbitt case. After the March 4 hearing before Commissioner Tack, someone had changed the assigned judge to Judge Kouris and back-dated the assignment to February 26, 2015. This makes it clear Judge Kouris can alter and otherwise falsify the records of the court, since this assignment was not reflected on the court records at the time of the March 4 hearing before Commissioner Tack. This change was made without any order by Presiding Judge Royal Hansen, who is charged with overseeing assignment of cases and who initiated the change to Judge Hogan on February 13 when ALL OF JUDGE KOURIS' CASES WERE RE-ASSIGNED.

148.    It is clear by the record that Judge Kouris is using his authority to attempt to bankrupt Mr. Babbitt by requiring constant appeals, objections, motions and hearings. Once Mr. Babbitt is no longer able to afford to appeal Judge Kouris, it is expected the real punishment will begin.

## FACTS RELEVANT TO MR. WILLSON'S CLAIMS

149.    The events below were listed separately than those above for purposes of clarity and understanding. However, dates are required to truly understand how intermingled Judge Kouris actions are in these two case. When the time lines are intermingled, this becomes more obvious but also more confusing so for clarity, we have separated them. Judge Kouris is also known for punishing litigants when exacting retaliation against attorneys. This is in part why so many attorneys have asked the Judicial Conduct Commission to not have to appear before Judge Kouris in the future. We will be subpoenaing these requests as part of this litigation.

150.    On May 29, 2012, a divorce petition was filed in Utah's 3rd District Court between the parties Jennifer Willson (Petitioner) and J Phillip Willson (Respondent).

151.    On August 6, 2012, Judge Kouris was assigned the case. It is noteworthy that the norm, as mentioned above, is for the judge to be assigned months into a new case, unlike Mr. Babbitt's case above where Judge Kouris took the case on the day it was filed.

152.    Commissioner Tack awarded Mr. Willson temporary custody of the minor children.

153.    On September 18, 2012, Judge Kouris scheduled an evidentiary hearing based on Petitioner's Objection to Commissioner Tack's Temporary Orders. However, this Objection was legally insufficient based on Utah rule 108. On the record, Judge Kouris states, 'That is what the rule says. So we are going to stay with the rule'. This proves he was aware of the rule.

Regardless, a hearing on the Objection was scheduled, instead of the Objection being overruled in accordance with Utah law. This was but a sign of things to come for Mr. Willson.

154.     On October 1, 2012, Judge Kouris presided over an evidentiary hearing on the Petitioner's Objection to Commissioner Tack's Temporary Orders. From the outset Judge Kouris displayed his bias against Mr. Willson when on the record, Judge Kouris threatened to jail Mr. Willson. The basis for the threat was that Mr. Willson had not provided the court or Petitioner with copies of the couple's bank statements. In fact, Petitioner had access to all the bank statements in question and had already submitted them to the court as part of her Financial Declaration.

155.     At the same hearing, Judge Kouris improperly allowed counsel for the Petitioner to offer new testimony and introduce additional exhibits, which is not allowed under the rule. This essentially changed the hearing from an evidentiary hearing to a new hearing on Temporary Orders. Mr. Willson was never given notice of the change, as it was done literally in the course of the hearing itself.

156.     However, Mr. Willson was not given the same opportunity as Petitioner. Though present, Mr. Willson was not allowed to call witnesses (also present), offer additional evidence or new testimony. The docketed hearing was for the purpose of determining only whether Commissioner Tack had made an error of law. Judge Kouris' impromptu change to a new hearing on Temporary Orders unjustly restricted Mr. Willson, as he was not only not notified in advance that this was not an Objection hearing, but also because Judge Kouris willfully refused to allow Mr. Willson to participate in the hearing by way of presenting evidence and witnesses. Petitioner, however, was not only given the opportunity to present additional testimony and evidence, but Judge Kouris himself, answered questions for and proffered testimony in behalf of Ms. Willson during cross examination.

157.     The outcome of this hearing was pre-determined by Judge Kouris and, in fact, at the hearing he changed the custody denoted in the Temporary Orders. Astonishingly, he ordered a 3 day rotating custody schedule which required the minor children to travel 50 miles to school, each way, on a daily basis. Judge Kouris' bias toward Petitioner also hurt the minor children, which are by law the Judge's primary concern. Keep in mind, this was supposed to be a hearing to determine whether or not Commissioner Tack had made an error of law regarding ONLY financial matters. The issue of custody was NOT before the court, but Judge Kouris disregarded this and altered the custody arrangement regardless.

158.     On November 21, 2012, Judge Kouris presided over a ½ day bifurcated trial on financial

issues. It's important to note that this hearing was for the purpose of financial issues only and a custody evaluation had been ordered on August 2, 2012 to aid the court in deciding final custody arrangements This evaluation was still in progress and no report had been made to the court.

159.     Regardless, at the hearing on financial issues, Judge Kouris stated on the record his intention to award custody to the Petitioner. To date, Judge Kouris had not presided over any hearings in the case concerning custody, nor had he heard any witnesses or evidence. Judge Kouris entered the hearing with the full intention of awarding custody to the attractive female mother, regardless of evidence presented at a later date.

160.     Later in the hearing, Judge Kouris interrupted a witness examination to ask, 'Why is it that you think that food and household supplies for [Mr. Willson], living by himself, would be the same as [Petitioner] living with two children?'. This statement denotes Judge Kouris ongoing intention to aware Petitioner final custody, and he was using this assumption to determine financial matters at this hearing. The children were spending equal time at both parent's homes (the rotating 3 day schedule noted above), but Judge Kouris was trying to determine permanent financial awards based on what he had already determined the outcome of the case would be.

161.     This hearing was adjourned and scheduled to reconvene on December 21, 2012.

162.     On December 21, 2012, the court reconvened with Judge Kouris presiding. Once again, Judge Kouris interrupted direct examination of the Petitioner to ask her, 'How was your father able to convince you to buy a car that you were borrowing from him? I just ask because I'm just trying to figure out how to set up the same sort of thing for my daughter on my Volvo'. At other times, Judge Kouris openly flirted with the Petitioner during hearings.

163.     In fact, during cross-examination Mr. Willson's counsel, Terry Spencer PhD, asked Ms. Willson questions regarding evidence that she had clearly falsified in an attempt to defraud the court to obtain alimony. During the course of questioning, Judge Kouris interrupted Ms. Willson's answer to invoke the US Fifth Amendment for her.

164.     Conversely, when Mr. Willson took the stand, Judge Kouris himself took over questioning while at the same time refusing to allow Mr. Willson to answer or make a record. At least seven times, Judge Kouris directly asked Mr. Willson a question and then abruptly cut him off by stating, 'I don't want to talk about [subject of question]'. Mr. Willson had been attempting to answer the questions and make a legal record, but this was prevented by Judge Kouris.

165.     At one point, Judge Kouris accused Mr. Willson of being a drug user or dealer. This was

based on Mr. Willson's assertion that he pays his tithing in cash, and absent any evidence or
testimony from any party that Mr. Willson had ever used drugs or engaged in the drug trade. Mr.
Willson has obeyed the Word of Wisdom his entire life and was able to account for both the
source and spending of all the cash, as denoted in his financial declaration.

166.    Judge Kouris interrupted Mr. Willson at another point to ask, 'who were you paying, a
drug dealer?', and again later to comment, 'I see a lot of people through here and I have to tell
you that that's generally the work of a drug dealer'. When questioning Mr. Willson on why he
chose to use cash instead of check, Judge Kouris stated, 'You couldn't write a check for tithing?
I'm not a Mormon, but I understand they take checks there, is that true?'. Mr. Willson had with
him on the stand an end of year tithe statement issued him by the LDS church, denoting it had
received the cash payments in question. Judge Kouris refused to admit it as an exhibit or even
look at it.

167.    On February 1, 2013, Judge Kouris issued his Memorandum Decision concerning the
November 21 & December 21 hearings. In this decision, Judge Kouris imputed an income to
Mr. Willson that was $20,000 higher than any evidence or testimony supported while reducing
Petitioner's income by at least $10,000. This was done despite evidence Petitioner had falsified
documents and while under cross-examination, Judge Kouris had interrupted questioning to
invoke Petitioner's Fifth Amendment to the US Constitution right against self-incrimination.

168.    Despite evidence Petitioner had falsified documents submitted to the court and under
direct examination repeatedly invoked the US Fifth Amendment against self incrimination,
Judge Kouris found her to be 'completely truthful'. Conversely, he cast serious aspersions on
Mr. Willson's character. Furthermore, Judge Kouris awarded Petitioner $800/month alimony
based on her anticipated FUTURE expenses and not on her past or present expenses. This was
justified by attributing an income to Mr. Willson of $1700/month more than he actually earns,
while attributing minimum wage to Petitioner despite the fact she earned $9/hour 40
hours/week. Utah law & precedent prohibits this practice and states, 'future or proposed
expenses are not appropriate for use in determining alimony'. Also, actual income is required or
the purposes of alimony & child support awards. Courts are not permitted to artificially raise
one party's income while lowering the other party's income.

169.    Regardless, Petitioner worked the majority of the 8 year marriage and in fact was better
employed since the separation than during the marriage. It is uncommon for alimony to be
awarded in cases where both parties maintained employment for the duration of their
relationship. Petitioner was not relying on Mr. Willson's income prior to, during or after the

marriage.

170.     On April 30, 2013, Judge Kouris presided over a hearing on counter motions offered by each party. Judge Kouris denied Mr. Willson's motion to reconsider the additional $20,000/year income Judge Kouris had previously attributed him and recalculate Petitioner's income without the $10,000 artificial reduction. However, Judge Kouris granted Petitioner's motion to recalculate the tax rate on Mr. Willson's income for the purposes of determining child support and alimony. Given that no evidence or testimony had been previously presented to claim Mr. Willson earned $20,000/year more, the court decided he had a higher tax bracket. Petitioner wanted the court to use a lower tax bracket, which would increase Mr. Willson's imputed take home pay and allow for higher alimony.

171.     On July 3, 2013, Judge Kouris presided over the evidentiary hearing to address the tax rate issue above and only the tax rate issue. However, Judge Kouris once more allowed counsel for the Petitioner to present exhibits outside the scope of the hearing, and admitted them into the record.

172.     On July 31, 2013, Judge Kouris issued his Amended Memorandum Decision. In that Decision, he stated there were now two issues raised, not one. Specifically, he wrote, 'this court determined that 2 issues raised in these pleading would be reconsidered. First, this court concluded that it improperly offset the Petitioner's marital debts with monies owed Petitioner by Respondent'. And also, 'The second issue this Court reconsidered is the tax rate applied to Respondent's income in the alimony calculation'. Mr. Willson was never allowed a hearing on the first issue cited by the Memorandum Decision.

173.     These actions correspond to incidents in the Brown vs. Babbitt case above, wherein Judge Kouris was notified of the appeal filed by Mr. Babbitt.

174.     In the Amended Memorandum Decision, Judge Kouris increased the alimony award by $1150/month, to a total of $1950/month and awarded the Petitioner a lump sum judgment of $36,000.

175.     Because of this ruling, the Utah Office of Recovery Services garnishes Mr. Willson's paycheck for 60% of his earnings. Where Mr. Willson had previously been current on his spousal & child support. However this new order created a shortfall in Mr. Willson's income of $700/month and he is currently $54,000 in arrears because of Judge Kouris' malicious misconduct and false income attributed to both parties in the Willson vs Willson case.

176.     In a couple hearings with Judge Kouris, Mr. Willson went from having full custody of his children to now having split custody, paying alimony, losing 60% of his monthly income

and being $54,000 in arrears in the space of about one year. The amount of this arrears has other effects as ORS has petition power with the Utah Courts to motion for show cause, Mr. Willson has had his passport seized by the US Department of State, his tax refunds seized for back support and his credit is damaged, which makes his auto loan, mortgage and credit card interest rates increase.

177.     Subsequent to this ruling, Mr. Willson filed a confidential complaint with the Utah Judicial Conduct Commission. At the time of the complaint, Utah Supreme Court Justice Himonas was serving on the Commission. Upon receipt of the complaint, Judge Himonas passed the complaint along to Judge Kouris, his friend and fellow church member.

178.     On December 5, 2013, either Judge Kouris or Judge Himonas FILED THE JCC COMPLAINT WITH JUDGE KOURIS UNDER THE WILLSON VS Willson CASE. That same day, Judge Kouris requested a telephone conference with counsel for both parties.

179.     The following day, Judge Himonas entered a ruling on this complaint as though it were a motion to disqualify Judge Kouris, denying it. In that ruling, Judge Himonas claims Mr. Willson sent the complaint, not to the JCC, but Judge Kouris himself. He states Mr. Willson 'has sent to Judge Mark Kouris what on its face appears to be a complaint to the Utah Judicial Conduct Commission about Judge Kouris'. He continues, 'Judge Kouris has treated the complaint as a motion to disqualify' and found it 'legally insufficient'. Therefore, Judge Kouris referred it to Judge Himonas for review in his capacity as Associate Presiding Judge. Judge Himonas is a personal friend of Judge Kouris and attends the same church, and as such has a conflict of interest in matters concerning Judge Kouris.

180.     Judge Himonas was an acting member of the Judicial Conduct Commission and knew about the complaint. Because of this, even if Mr. Willson had sent a copy to Judge Kouris, it would have been improper for Judge Himonas to rule on it, as his position within the JCC created a conflict. Also, Judge Himonas is a personal friend of Judge Kouris and attends the same church, and as such has a conflict of interest in matters concerning Judge Kouris. Should it be believed that Judge Himonas' telling of the facts is true, it remains he did not pass the motion on to another judge for review & decision, despite obvious conflicts of interest.

181.     Furthermore, because the JCC complaint was filed with the court and interpreted as a Motion to Disqualify, Mr. Willson was denied his rights to counsel under Utah law. Utah Rules of Civil Procedure allow only one motion to disqualify per case. By filing the JCC complaint with the court and ruling on it as a Motion to Disqualify, Judges Kouris & Himonas removed Mr. Willson's one opportunity to file such a motion with the assistance of counsel.

182.    Because of this fact, Mr. Willson had to file his actual Motion to Recuse Pro Se, which he did on January 28, 2014. Instead of obeying Utah State Law and either recusing or passing the motion to another judge for review, on January 30 Judge Kouris once again entered a ruling. In that ruling, he denied the motion and then sent his ruling & motion to Judge Himonas.

183.    On February 3, 2014, Judge Himonas again denies the Motion to Disqualify Judge Kouris. Judge Himonas is a personal friend of Judge Kouris and attends the same church, and as such has a conflict of interest in matters concerning Judge Kouris. On February 5, Mr. Willson filed a Motion to Reconsider his Motion to Disqualify, which was denied by Judge Himonas on February 13, 2014. And again, Judge Himonas has a conflict.

184.    In that denial, Judge Himonas falsely states that the only reason Judge Kouris is aware of Mr. Willson's complaint to the JCC is because Mr. Willson attached an email from the JCC to his January 28 filing. This completely ignores the fact that one of the judges filed the actual complaint with the court back in December 2013 and Judge Kouris ruled on it.

185.    In all five motions to recuse/disqualify mentioned in this document, Judge Kouris never follows state law. Instead he always denies them and always sends them to Judge Himonas, his personal friend with whom he shares Greek heritage, religious affiliation and house of worship. This is more than coincidence, as Judge Kouris worked in West Jordan while Judge Himonas was downtown in the Matheson Courthouse. It's obvious Judge Kouris was calling in a favor from a friend in all these instances. Judge Kouris had 70 District Court judges to choose from, including 4 judges sharing the building with him. We will be subpoenaing all the records of matters Judge Kouris referred to Judge Himonas, as it appears Judge Himonas is the only judge ever called upon.

186.    On April 6, 2014, Judge Kouris presided over day one of a two day final custody trial for the parties. At that trial, the custody evaluator recommended a return to Commissioner Tack's original temporary order granting Mr. Willson sole physical & legal custody of the parties' minor children. Photographic evidence was presented showing where Petitioner had tied the couples one year old child to a chair, to which the custody evaluator commented, she has 'grave concerns about this parenting style'. Judge Kouris' comment (in his ruling below) regarding the one year old child tied to the chair by Petitioner was that she was 'erring on the side of caution'. Petitioner stated she 'did this all the time'.

187.    On May 28, 2014, Judge Kouris presided over day two of the final custody trial. At this trial, Judge Kouris engaged in an argument with Mr. Willson's counsel wherein he stated it was reasonable to expect Mr. Willson to be able to live off 30% of his income. ORS disagrees with

this assessment and will only garnish a maximum of 60% of a parties income, leaving them at least 40% to live off. However, in support of his argument, Judge Kouris pointed out that 30% of $1,000,000 is enough for anyone to live off. Unfortunately, Mr Willson's income for the past three years averages only $54,000, far less than $1,000,000.

188.     On June 27, 2014, Judge Kouris issued his Memorandum Decision for the two-day custody trial. In that decision, Judge Kouris ignored the court's own witness of the custody evaluator, as well as evidence of abuse & neglect of the minor children. Instead he ordered an joint physical custody (each parent spends an equal amount of time with the children).

189.     Impugning an income of $4,500/month to Mr. Willson, he awarded child support of $702/month & alimony of $1906/month. Mr. Willson's net pay each month is $1400 after child support & alimony.

190.     Utah law requires child support calculations to be based on a mathematical formula based on both parties income and an estimate of the costs of rearing children. However, in cases where joint physical custody is ordered (as in the Willson case), child support is rarely ordered since both parents are sharing the children an equal amount of time.

191.     Furthermore, Mr. Willson was found in contempt for not using his remaining $1400/month to pay the mortgage of $2417/month. as well as the timeshare payment of $650/month. This is despite the fact that $2417 is a larger number than $1400 and Mr. Willson provided documentation proving the bank refused all payments from Mr. Willson once the couple requested a loan modification/short sale. Mr. Willson was also found in contempt for failing to pay $650/month for the couples timeshare, despite the fact Petitioner had been ordered on February 1, 2013 to immediately 'dispose of or abandon' the timeshare but failed to do so. Furthermore, Judge Kouris awarded a judgment to Petitioner of nearly two years of missed timeshare payments incurred for the months FOLLOWING the order wherein Petitioner was required to 'dispose of or abandon' the timeshare.

192.     Utah law clearly states a party cannot be held in contempt for violating an order which they were unable to obey (as in the mortgage of $2417 above). While it does not specifically state that a party cannot be held in contempt for the opposing party violating an order (as in the timeshare above), it is a well-established precedent to which judges typically defer. Penalty for Mr. Willson's contempt was 30 days in jail and $1,000 fine, which was stayed for 6 months to allow him time to make a 'good faith' effort at these payments.

193.     On December 9, 2014, Judge Kouris signed the final order in this case.

194.     A court docket printed on March 19, 2015 shows that on December 11, 2014 Judge

Robin Reese was assigned the Willson vs Willson case. The same docket then shows the case was assigned to Judge Paul Parker on February 13, 2015. Judge Kouris no longer presided.

195.    A court docket printed on March 25, 2015 shows no entry on December 11 at all, let alone an assignment to Judge Reese. However it does show that on February 13, 2015 the Willson vs Willson case was assigned to Judge Hogan then transferred back to Judge Kouris on February 26, 2015.

196.    A court docket printed on March 26, 2015 shows that on March 25, 2015 Judge James Gardner was assigned the case and then subsequently Judge Mark Kouris took it back again.

197.    These docket entries are not filing errors. The case has been re-assigned three times and each time Judge Kouris takes control of the case again and falsifies the docket. It is clear he is also maliciously stalking Mr. Willson, as well as Mr. Babbitt.

## FIRST CAUSE OF ACTION

198.    The foregoing allegations are incorporated as if re-alleged herein..

199.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

200.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

201.    Under the color of state law, Judge Kouris presided over a case in which he had an obvious, but undisclosed bias against Mr. Babbitt. Over the course of five years, he proceeded to demonstrate that bias through rulings punitive to Mr. Babbitt, despite Mr. Babbitt's complete compliance with court orders, while at the same time requiring zero compliance from Petitioner in the case. Mr. Babbitt has not had legal remedies available to him for five years, as Judge Kouris denied him his rights at every turn. At this point in the case, Judge Kouris' tact has changed to require Mr. Babbitt to appeal every order issued by Judge Kouris, unnecessarily impoverishing Mr. Babbitt in his attempts to seek legal recourse.

202.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Deprivation of Property Clause of the Fifth Amendment, the Ninth Amendments, Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Articles I, Sections 1, 3, 7, 11 & 25 of the Utah Constitution, Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2 & 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6, 2.8, 2.10 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34, 30-3-34.5, 30-3-35 & 30-3-37, as well as Utah Rules of Civil Procedure sections 43 & 77 .

203.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic

losses, emotional distress and other compensable damages.

## SECOND CAUSE OF ACTION

204.    The foregoing allegations are incorporated as if re-alleged herein..

205.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

206.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

207.    Under the color of state law, Judge Kouris denied Mr. Babbitt's June 2010 Motion for Temporary Restraining Order and refused to enforce Utah Statute 30-3-37 requiring 60 days notice by the moving party.

208.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 78B-15-108, 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

209.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## THIRD CAUSE OF ACTION

210.    The foregoing allegations are incorporated as if re-alleged herein..

211.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

212.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

213.    Under the color of state law, Judge Kouris denied Mr. Babbitt's August 2010 Motion for Temporary Restraining Order while at the same time granting Troy Brown's Motion for Temporary Restraining Order despite nearly identical contents.

214.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 78B-15-108, 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

215.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

**FOURTH CAUSE OF ACTION**

216.     The foregoing allegations are incorporated as if re-alleged herein..

217.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

218.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

219.     Under the color of state law, Judge Kouris refused to hold an evidentiary hearing on
September 29, 2010 regarding matters certified for contempt by Commissioner Tack.

220.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights
under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth
Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 &
25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of
Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-
34, 30-3-35 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

221.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic
losses, emotional distress and other compensable damages.

**FIFTH CAUSE OF ACTION**

222.     The foregoing allegations are incorporated as if re-alleged herein..

223.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

224.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

225.     Under the color of state law, Judge Kouris appointed Judge Livingston as Special Master
in the case, and only Judge Livingston, either without checking if Judge Livingston would
perform the duties requested, or more likely specifically because he knew Judge Livingston was
unavailable. As a result, Mr. Babbitt was unable to file new Motions for Order to Show Cause,
as all matters were referred to the non-existent Special Master. Mr. Babbitt was unable to see his
child for 18 months and had no Special Master or court willing to hear him.

226.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights
under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth
Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 &
25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of
Judicial Conduct, Canon 2.2, 2.3, 2.6 &  2.13 of the Utah Code of Judicial Conduct, Utah
Statute 30-3-34, 30-3-35 & 30-3-37 and Utah Rules of Civil Procedure sections 43, 53 & 77.

227.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic

losses, emotional distress and other compensable damages.

## SIXTH CAUSE OF ACTION

228.     The foregoing allegations are incorporated as if re-alleged herein..

229.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

230.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

231.     Under the color of state law, Judge Kouris denied Mr. Babbitt's November 2010 Motion for Temporary Restraining Order and granted Ms. Brown's Motion for Temporary Restraining Order.

232.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

233.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## SEVENTH CAUSE OF ACTION

234.     The foregoing allegations are incorporated as if re-alleged herein..

235.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

236.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

237.     Under the color of state law, Judge Kouris denied Mr. Babbitt's November 2010 Motion for Temporary Restraining Order and granted Ms. Brown's Motion for Temporary Restraining Order. Precedent in Utah holds that denying a child vaccinations is tantamount to medical neglect.

238.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

239.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic

losses, emotional distress and other compensable damages.

## EIGHTH CAUSE OF ACTION

240.    The foregoing allegations are incorporated as if re-alleged herein..

241.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

242.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

243.    Under the color of state law, Judge Kouris refused to hold evidentiary hearings from any of the certified contempt actions brought by Mr. Babbitt between April 2010 and February 2012. Instead, he stated they would be part of the December 2012 trial, but then ruled after trial that Mr. Babbitt's contempt offset Ms. Brown's contempts. No party, nor the court, has ever motioned for Mr. Babbitt to be held in contempt and Judge Kouris has repeatedly refused to state how Mr. Babbitt is in contempt. He also refuses to sanction Ms. Brown for her repeated Contempts.

244.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34, 30-3-35 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

245.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## NINTH CAUSE OF ACTION

246.    The foregoing allegations are incorporated as if re-alleged herein..

247.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

248.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

249.    Under the color of state law, Judge Kouris ordered on October 2, 2012 that Mr. Babbitt, at his own expense, must have supervised visits on site and in the presence of an off duty police officer.

250.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of

Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34, 30-3-35, 30-3-36(1) & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

251.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TENTH CAUSE OF ACTION

252.     The foregoing allegations are incorporated as if re-alleged herein..

253.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

254.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

255.     Under the color of state law, Judge Kouris in his April 17, 2013 Decree of Divorce & Judgment, Child Custody Section, paragraph 3(k) ordered Mr. Babbitt's visitation was contingent on remaining current on child support and not missing any parent time.

256.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 78B, Chapter 12, 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

257.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## ELEVENTH CAUSE OF ACTION

258.     The foregoing allegations are incorporated as if re-alleged herein..

259.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

260.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

261.     Under the color of state law, Judge Kouris in his April 17, 2013 Decree of Divorce & Judgment, Child Custody Section, paragraph 3(m) ordered Mr. Babbitt to REPEAT therapy already obtained and for a condition which Mr. Babbitt had never been tested and which Dr. Hale was unqualified to diagnose. Further, the therapy was required to be completed with one of six parties, all of whom have been unwilling to perform the duties required by the court order, as the order would jeopardize their license to practice.

262.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth

Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

263.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWELTH CAUSE OF ACTION

264.     The foregoing allegations are incorporated as if re-alleged herein..

265.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

266.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

267.     Under the color of state law, Judge Kouris in his April 17, 2013 Decree of Divorce & Judgment, Child Custody Section, paragraph 3(a) thru 3(j) ordered Mr. Babbitt's visitation to be continually supervised in contravention of Utah statute which requires actual evidence that Mr. Babbitt was in the past or presently poses a current threat to the safety & well being of the minor child.

268.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34, 30-3-34.5 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

269.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## THIRTEENTH CAUSE OF ACTION

270.     The foregoing allegations are incorporated as if re-alleged herein..

271.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

272.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

273.     Under the color of state law, Judge Kouris in his April 17, 2013 Decree of Divorce & Judgment, Child Custody Section, paragraph 3(l) ordered Mr. Babbitt's to complete parenting classes which did not exist and further ordered that Mr. Babbitt's relationship status and residential status remain unchanged.

274.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

275.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## FOURTEENTH CAUSE OF ACTION

276.     The foregoing allegations are incorporated as if re-alleged herein..

277.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

278.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

279.     Under the color of state law, Judge Kouris in his April 17, 2013 Decree of Divorce & Judgment, Child Custody Section, paragraph 3(o) ordered that neither party could contact DCFS unless they knew in advance that their claim would be substantiated, which further endangered the minor child. Violation of this section was noted to be worthy of contempt.

280.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 78B-15-108, 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

281.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## FIFTEENTH CAUSE OF ACTION

282.     The foregoing allegations are incorporated as if re-alleged herein..

283.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

284.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

285.     Under the color of state law, Judge Kouris in his April 17, 2013 Decree of Divorce & Judgment, Child Custody Section, paragraph 3(p) ordered that Mr. Babbitt should be identified on all school & medical records as the minor child's father, and given access to those records

but has consistently and repeatedly refused to enforce that section.

286.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

287.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## SIXTEENTH CAUSE OF ACTION

288.     The foregoing allegations are incorporated as if re-alleged herein..

289.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

290.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

291.     Under the color of state law, Judge Kouris in his April 17, 2013 Decree of Divorce & Judgment, Child Custody Section, paragraph 3(q) ordered that Ms. Brown receive psychotherapy for her extreme anxiety and failure to launch, but has repeatedly and consistently failed and refused to enforce this provision. The result has been an ongoing pattern of contempt by Ms. Brown as she struggles to deal with her anxiety by violating the court order.

292.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

293.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## SEVENTEENTH CAUSE OF ACTION

294.     The foregoing allegations are incorporated as if re-alleged herein..

295.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

296.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

297.     Under the color of state law, Judge Kouris in his April 17, 2013 Decree of Divorce &

Judgment, Child Custody Section, paragraph 3(r) ordered that Ms. Brown not have any contact with any member of Mr. Babbitt's family or any person associated with his wife or her former husband, Mr. Babbitt's business or his wife's workplace. However, Judge Kouris has repeatedly and consistently failed and refused to enforce this provision. The result has been harm to the minor children in Mr. Babbitt's home at Ms. Brown's doing, as well as endangerment of Mrs. Babbitt's employment and increased emotional suffering & legal fees in Mrs. Babbitt's custody case with her ex-husband.

298.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

299.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## EIGHTEENTH CAUSE OF ACTION

300.    The foregoing allegations are incorporated as if re-alleged herein..

301.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

302.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

303.    Under the color of state law, Judge Kouris presided over a hearing on June 17, 2013 during which he refused to allow Mr. Babbitt to present evidence or create a record, and in fact, threatened to sanction Mr. Babbitt's attorney should he attempt to do so.

304.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 78B-15-108, 30-3-34, 30-3-34.5, 30-3-36(1) & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

305.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## NINETEENTH CAUSE OF ACTION

306.     The foregoing allegations are incorporated as if re-alleged herein..

307.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

308.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

309.     Under the color of state law, Judge Kouris received Mr. Babbitt's first motion to disqualify and in violation of Utah law entered a ruling wherein he refused to recuse himself. Utah law does not allow Judge Kouris to refuse to recuse; he must either immediately recuse or pass the motion to an impartial judge for review & decision.

310.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, and Canon 2.2, 2.3, 2.6, 2.7, 2.9, 2.11 & 2.16 of the Utah Code of Judicial Conduct & Rule 63 of Utah Rules of Civil Procedure.

311.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWENTIETH CAUSE OF ACTION

312.     The foregoing allegations are incorporated as if re-alleged herein..

313.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

314.     Judge Himonas is a "person", as that term is used in the text of 42 U.S.C §1983.

315.     Under the color of state law, Judge Himonas received Mr. Babbitt's first motion to disqualify and Judge Kouris' ruling refusing to recuse. Instead of conducting his own independent investigation into the allegations, Judge Himonas merely endorsed Judge Kouris' ruling. Judge Himonas is a personal friend of Judge Kouris and attends the same church, and as such has a conflict of interest in matters concerning Judge Kouris.

316.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, §1985 & § 1986, Article I, Sections 1, 3, 7, 11 & 25, Article IV, Section 10, and Article VIII, Section 13 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, and Canon 2.2, 2.3, 2.4, 2.6, 2.7, 2.9, 2.11, 2.12, 2.15 & 2.16 of the Utah Code of Judicial Conduct and Rule 63 of the Utah Rules of Civil Procedure.

317.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWENTY-FIRST CAUSE OF ACTION

318.    The foregoing allegations are incorporated as if re-alleged herein..

319.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

320.    Judge Himonas is a "person", as that term is used in the text of 42 U.S.C §1983.

321.    Under the color of state law, Judge Himonas received Mr. Babbitt's second Pro Se motion to disqualify and Judge Kouris' ruling refusing to recuse. Instead of conducting his own independent investigation into the allegations, Judge Himonas merely endorsed Judge Kouris' ruling. Judge Himonas is a personal friend of Judge Kouris and attends the same church, and as such has a conflict of interest in matters concerning Judge Kouris.

322.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, §1985 & §1986, Article I, Sections 1, 3, 7, 11 & 25, Article IV, Section 10, and Article VIII, Section 13 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, and Canon 2.2, 2.3, 2.4, 2.6, 2.7, 2.9, 2.11, 2.12, 2.15 & 2.16 of the Utah Code of Judicial Conduct and Rule 63 of the Utah Rules of Civil Procedure.

323.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWENTY-SECOND CAUSE OF ACTION

324.    The foregoing allegations are incorporated as if re-alleged herein..

325.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

326.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

327.    Under the color of state law, Judge Kouris denied Mr. Babbitt's February 2014 Motion for Temporary Restraining Order which would have merely enforced the orders of his own court as they concern visitation. Judge Kouris later found Ms. Brown guilty of contempt for refusing to allow the visitation ordered, and which the Temporary Restraining Order specifically addressed. However, all sanctions were stayed.

328.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth

Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

329.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWENTY-THIRD CAUSE OF ACTION

330.    The foregoing allegations are incorporated as if re-alleged herein..

331.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

332.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

333.    Under the color of state law, Judge Kouris again refused to enforce his own orders and Utah law pertaining to the contempt heard at the April 17, 2014 evidentiary hearing. Reluctantly, Judge Kouris found Ms. Brown guilty of contempt on two counts. However, all sanctions were stayed. On all remaining counts, Judge Kouris refused to find contempt citing months of visitation interference, which began 5 years ago and continues to this day, as problems the parties experienced communicating.

334.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 78B-15-108, 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

335.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWENTY-FOURTH CAUSE OF ACTION

336.    The foregoing allegations are incorporated as if re-alleged herein..

337.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

338.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

339.    Under the color of state law, Judge Kouris entered a ruling on May 29, 2014 in which he refused to sanction Ms. Brown in any way for the three contempt actions he found her guilty of at trial. He also refused to state on what grounds he found Mr. Babbitt in contempt, which he

claimed offset Ms. Brown's guilt.

340.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 78B-15-108 , 30-3-34, 30-3-34.5, 30-3-35, 30-3-36(1) & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

341.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWENTY-FIFTH CAUSE OF ACTION

342.    The foregoing allegations are incorporated as if re-alleged herein..

343.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

344.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

345.    Under the color of state law, Judge Kouris engaged in Ex Parte communication with Ms. Brown and/or the minor child's therapist. This communication resulted in Judge Kouris issuing an order, to the detriment of Mr. Babbitt, covering matters for which no hearing had been scheduled, no evidence presented and no witnesses testified.

346.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.4, 2.6, 2.9 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34, 30-3-34.5 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

347.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWENTY-SIXTH CAUSE OF ACTION

348.    The foregoing allegations are incorporated as if re-alleged herein..

349.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

350.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

351.    Under the color of state law, Judge Kouris ordered on September 17, 2014 that Mr. Babbitt's future visitation was contingent on Mr. Babbitt obtaining impossible to obtain therapy for a mental disorder he does not have and despite no evidence presented to the contrary. In fact, in past hearings Judge Kouris HAD heard witnesses and evidence proving this therapy was unnecessary. Judge Kouris required the visitation be supervised and more restrictive than Dr. Hale had recommended in her custody evaluation. This can only been seen as an effort to punish Mr. Babbitt for reporting Judge Kouris to the Judicial Conduct Commission and for appealing Judge Kouris' prior order. The matter was not before his court, no hearing was scheduled, no witnesses testified and no evidence was presented. This was a specious court order issued purely to retaliate against Mr. Babbitt.

352.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6, 2.9 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34, 30-3-34.5 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

353.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWENTY-SEVENTH CAUSE OF ACTION

354.    The foregoing allegations are incorporated as if re-alleged herein..

355.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

356.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

357.    Under the color of state law, Judge Kouris entered an order on September 17, 2014 that the minor child not be tested for Lactose Intolerance until she was ten years old. In fact, in past hearings Judge Kouris HAD heard both witnesses and evidence proving the minor child was NOT lactose intolerance, but this order served to continue restrictions placed on what Mr. Babbitt could feed the minor child during visits. This can only been seen as an effort to punish Mr. Babbitt for reporting Judge Kouris to the Judicial Conduct Commission and for appealing Judge Kouris' prior order. The matter was not before his court, no hearing was scheduled, no witnesses testified and no evidence was presented. This was a specious court order issued purely to retaliate against Mr. Babbitt.

358.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights

under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6, 2.9 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

359.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWENTY-EIGHTH CAUSE OF ACTION

360.     The foregoing allegations are incorporated as if re-alleged herein..

361.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

362.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

363.     Under the color of state law, Judge Kouris entered an order on September 17, 2014 that Mr. Babbitt's visitation be modified to a schedule more restrictive than ever recommended by any party, and without ever holding a hearing or allowing evidence or witnesses to be present. In doing so, he also failed to follow Utah law and consider family members as supervisors or set a future hearing date and conditions by which the visitation would change. This ruling on a matter not before the court, and on which no evidence or testimony was received, has a chilling effect on Mr. Babbitt's Constitutional rights to due process and his Constitutional right to parent his child in that a reasonable person could infer from this action that any further motions for remedies to redress Ms. Brown's failure to obey the orders of the Court will result in even further punitive restrictions on Mr. Babbitt's parent time & relationship with his child.

364.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6, 2.9 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

365.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## TWENTY-NINTH CAUSE OF ACTION

366.     The foregoing allegations are incorporated as if re-alleged herein..

367.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

368.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

369.     Under the color of state law, Judge Kouris entered an order on September 17, 2014 that visitation with the minor child be restricted to one room of the supervision center, line of site and never be allowed to leave the premises, resulting in a five-year-old child being kept for 6 hours in a small room under the guise of spending quality parent time with her father. The Special Master and supervision center, as well as Commissioner Michelle Tack all disagree that this is in the best interest of either the child or Mr. Babbitt, yet Judge Kouris made the order so restrictive that Commissioner Tack commented on the record, 'I don't think I can even interpret this order, let alone change it'.

370.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6, 2.9 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

371.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## THIRTIETH CAUSE OF ACTION

372.     The foregoing allegations are incorporated as if re-alleged herein..

373.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

374.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

375.     Under the color of state law, Judge Kouris entered an order on September 17, 2014 and then failed to provide notice to either parties counsel or the Special Master and did not 'Green File' it. Upon information and belief, Judge Kouris did this in an attempt to prevent the order from being appealed and prevent Mr. Babbitt from availing himself to the legal system to correct this abuse of power. This action, more than any others, proves Judge Kouris is acting maliciously. This was a specious court order issued purely to retaliate against Mr. Babbitt.

376.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of

Judicial Conduct, Canon 2.2, 2.3, 2.6, 2.9 & 2.16 of the Utah Code of Judicial Conduct, Utah
Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure section 5 & sections 43 & 77.

377.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic
losses, emotional distress and other compensable damages.

### THIRTY-FIRST CAUSE OF ACTION

378.     The foregoing allegations are incorporated as if re-alleged herein..

379.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

380.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

381.     Under the color of state law, Judge Kouris has repeatedly refused to follow state law and
require Ms. Brown to disclose the minor child's whereabouts for the entire 5 year duration he
has presided over the case. At no time has Mr. Babbitt or the court known the minor child's
whereabouts except those occassions when Mr. Babbitt hired a PI or asked local Police to find
her. Judge Kouris attempted to make this impossible in his April 17, 2013 order, but he
incorrectly labeled a 'police welfare check' as a DCFS report. Judge Kouris has aided Ms.
Brown in hiding the minor child from Mr. Babbitt & the court, in violation of Utah law
requiring the custodial parent to notify the court & non-custodial parent of the child's
whereabouts at all times.

382.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights
under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth
Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 &
25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of
Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah
Statutes 78B-15-108, 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

383.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic
losses, emotional distress and other compensable damages.

### THIRTY-SECOND CAUSE OF ACTION

384.     The foregoing allegations are incorporated as if re-alleged herein..

385.     This count is pled against the individual defendants on behalf of Mr. Babbitt.

386.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

387.     Under the color of state law, Judge Kouris refused to grant Mr. Babbitt's Motion for
Temporary Restraining Order filed in December 2014, which covered Mr. Babbitt's Christmas

visitation and Ms. Brown's refusal to provide it. In telephone conference, Judge Kouris demanded counsel for Mr. Babbitt to meet an impossible standard before granting the Temporary Restraining Order. Thereafter, Mr. Babbitt did not get his Christmas visitation, because Judge Kouris once again refused to enforce his own orders. It is guaranteed Ms. Brown will not facilitate visitation when she can get away with it, and this denial was another signal to her that she could ignore his orders with impunity.

388.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 78B-15-108 , 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

389.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

### THIRTY-THIRD CAUSE OF ACTION

390.    The foregoing allegations are incorporated as if re-alleged herein..

391.    This count is pled against the individual defendants on behalf of Mr. Babbitt.

392.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

393.    Under the color of state law, Judge Kouris was ostensibly moved to the Matheson Courthouse in downtown Salt Lake City to replace retiring Judge Kennedy. Upon information & belief, Judge Kouris was transferred there in an attempt to rein him in. Regardless, upon his transfer, the presiding judge appointed Judge Hogan on February 13, 2015 to replace Judge Kouris on Brown vs Babbitt case. Sometime after March 4, 2015, Judge Kouris went behind the presiding Judge's back and reclaimed the case, backdating the assignment to February 26, 2015. This action proves not only that Judge Kouris can and will falsify court records, but also that Presiding Judge Royal Hansen has no control over him, just as the Judicial Conduct Commission has no control over him. Upon information & belief, Judge Kouris did this in an effort to position himself to further punish Mr. Babbitt for reporting Judge Kouris' misconduct.

394.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of

Judicial Conduct, Canon 2.2, 2.3, 2.6, 2.9 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-37 and Utah Rules of Civil Procedure section 63A.

395.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## THIRTY-FOURTH CAUSE OF ACTION

396.    The foregoing allegations are incorporated as if re-alleged herein..

397.    This count is pled against the individual defendants on behalf of both Mr. Babbitt & Mr. Willson.

398.    Members of the Utah Judicial Conduct Commission & Colin Winchester are "persons", as that term is used in the text of 42 U.S.C §1983.

399.    Under the color of state law, Colin Winchester discussed Mr. Babbitt's complaint against Judge Kouris with Mr. Willson, in violation of state law and without permission from Mr. Babbitt. Mr. Babbitt's complaint also made it's way to Judge Kouris, as did Mr. Willson's, through an unnamed third party, allowing Judge Kouris to be aware of the complaints and exact revenge for the complaints against Mr. Babbitt. This act by an unnamed third party within the Judicial Conduct Commission is inexcusable.

400.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1985, Article I, Sections 1, 3, 7, 11 & 25, Article IV, Section 10, and Article VIII, Section 13 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.4, 2.6, 2.7, 2.9, 2.11, 2.12, 2.15 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34, 30-3-35 & 30-3-37 and Utah Rules of Civil Procedure sections 43 & 77.

401.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## THIRTY-FIFTH CAUSE OF ACTION

402.    The foregoing allegations are incorporated as if re-alleged herein..

403.    This count is pled against the individual defendants on behalf of Mr. Willson.

404.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

405.    Under the color of state law, on September 18, 2012 Judge Kouris granted a hearing on an improperly filed objection from opposing counsel.

406.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6, 2.9 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-5, 30-3-34 & 30-3-35 and Utah Rules of Civil Procedure sections 43, 77 & 108.

407.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## THIRTY-SIXTH CAUSE OF ACTION

408.     The foregoing allegations are incorporated as if re-alleged herein..

409.     This count is pled against the individual defendants on behalf of Mr. Willson.

410.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

411.     Under the color of state law, on October 1, 2012 Judge Kouris presided over a hearing on an improperly filed objection and in the course of that hearing changed it to a new hearing on Temporary Orders without giving notice to either party or either counsel. As a result of this change, Judge Kouris then altered the custody arrangement ordered by Commissioner Tack weeks prior. The matter of custody was not before the court at this hearing and Judge Kouris actually refused to allow Mr. Willson to present evidence or witnesses.

412.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 & 30-3-35 and Utah Rules of Civil Procedure sections 43, 77 &108.

413.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## THIRTY-SEVENTH CAUSE OF ACTION

414.     The foregoing allegations are incorporated as if re-alleged herein..

415.     This count is pled against the individual defendants on behalf of Mr. Willson.

416.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

417.     Under the color of state law, on December 21, 2012 Judge Kouris presided over a

hearing and instead of allowing counsel to question Mr. Willson and allow Mr. Willson to answer for the record, he took over questioning and refused to allow Mr. Willson to enter his answers on the record. However, Judge Kouris made a record repeatedly accusing Mr. Willson of being a drug dealer.

418.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the First Amendment, Fifth Amendment, Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 4, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-5, 30-3-34 & 30-3-35 and Utah Rules of Civil Procedure sections 43 & 77.

419.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

### THIRTY-EIGHTH CAUSE OF ACTION

420.     The foregoing allegations are incorporated as if re-alleged herein..

421.     This count is pled against the individual defendants on behalf of Mr. Willson.

422.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

423.     Under the color of state law, on February 1, 2013 Judge Kouris issued a Memorandum Decision impugning Mr. Willson an income $20,000 over any evidence thereof artificially reducing Petitioner's income by at least $10,000. Using that falsified income as justification, Judge Kouris proceeded to unjustly impoverish Mr. Willson by awarding excessive child support and alimony.

424.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the First Amendment, Fifth Amendment, Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 4, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 78B - Chapter 12 -203, 30-3-5, 30-3-34 & 30-3-35 and Utah Rules of Civil Procedure sections 43 & 77.

425.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## THIRTY-NINTH CAUSE OF ACTION

426.    The foregoing allegations are incorporated as if re-alleged herein..

427.    This count is pled against the individual defendants on behalf of Mr. Willson.

428.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

429.    Under the color of state law, on April 30, 2013 Judge Kouris denied Mr. Willson's motion to correct the false income attributed to him & Petitioner, while granting Petitioner's motion to recalculate the tax rate using the false income.

430.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Fifth Amendment, Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 78B – Chapter 12-203, 30-3-5, 30-3-34 & 30-3-35 and Utah Rules of Civil Procedure sections 43 & 77.

431.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## FORTIETH CAUSE OF ACTION

432.    The foregoing allegations are incorporated as if re-alleged herein..

433.    This count is pled against the individual defendants on behalf of Mr. Willson.

434.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

435.    Under the color of state law, on July 3, 2013 Judge Kouris presided over a hearing in which he allowed opposing counsel to enter into evidence & exhibits outside the scope of the hearing while not allowing Mr. Willson the same opportunity or notice.

436.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Fifth Amendment, Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 78B – Chapter 12, 30-3-5, 30-3-34 & 30-3-35 and Utah Rules of Civil Procedure sections 43 & 77.

437.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## FORTY-FIRST CAUSE OF ACTION

438.     The foregoing allegations are incorporated as if re-alleged herein..

439.     This count is pled against the individual defendants on behalf of Mr. Willson.

440.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

441.     Under the color of state law, on July 31, 2013 Judge Kouris entered a ruling on a matter
not before the court on July 3 and which Mr. Willson had never had a hearing, presented
evidence or witnesses. He used the false income impugned to Mr. Willson above and this new
issue to further unjustly impoverish Mr. Willson financially by increasing the prior alimony
award and adding on a judgment for $36,000.

442.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights
under the Fifth Amendment, Ninth Amendment, and Due Process and Equal Protection Clauses
of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I,
Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3
of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial
Conduct, Utah Statutes 78B – Chapter 12, 30-3-5, 30-3-34 & 30-3-35 and Utah Rules of Civil
Procedure sections 43 & 77.

443.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic
losses, emotional distress and other compensable damages.

## FORTY-SECOND CAUSE OF ACTION

444.     The foregoing allegations are incorporated as if re-alleged herein..

445.     This count is pled against the individual defendants on behalf of Mr. Willson.

446.     Judge Himonas Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

447.     Under the color of state law, on or about December 5, 2013 Judge Himonas passed a
confidential complaint Mr. Willson filed with the Utah Judicial Conduct Commission to Judge
Kouris. Judge Himonas had access to this as part of his position within the JCC.

448.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights
under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth
Amendment to the United States Constitution, 42 U.S.C. §1983, §1985 & §1986, Article I,
Sections 1, 3, 7, 11 & 25, Article IV, Section 10, and Article VIII, Section 13 of the Utah
Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, and Canon 2.2, 2.3, 2.4,
2.6, 2.7, 2.9, 2.11, 2.12, 2.15 & 2.16 of the Utah Code of Judicial Conduct.

449.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## FORTY-THIRD CAUSE OF ACTION

450.     The foregoing allegations are incorporated as if re-alleged herein..

451.     This count is pled against the individual defendants on behalf of Mr. Willson.

452.     Judge Himonas & Judge Mark Kouris are "persons", as that term is used in the text of 42 U.S.C §1983.

453.     Under the color of state law, on December 5, 2013 Judge Kouris or Judge Himonas filed Mr. Willson's JCC complaint in the Willson vs Willson case as though it were a Motion to Disqualify Judge Kouris. This violated confidentiality of the JCC as well as robbing Mr. Willson of his opportunity to file an actual motion with the assistance of counsel.

454.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, §1985 & §1986, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10, and Article VIII, Section 13 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, and Canon 2.2, 2.3, 2.4, 2.6, 2.7, 2.9, 2.11, 2.12, 2.15 & 2.16 of the Utah Code of Judicial Conduct and Rule 63 of the Utah Rules of Civil Procedure.

455.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## FORTY-FOURTH CAUSE OF ACTION

456.     The foregoing allegations are incorporated as if re-alleged herein..

457.     This count is pled against the individual defendants on behalf of Mr. Willson.

458.     Judge Himonas is a "person", as that term is used in the text of 42 U.S.C §1983.

459.     Under the color of state law, on December 6, 2013 Judge Himonas entered a ruling on Mr. Willson's JCC complaint as though it was a motion to disqualify Judge Kouris. This was an obvious conflict of interest as Judge Kouris is a personal friend of Judge Himonas, attends the same church and Judge Himonas would later vote on the complaint in a JCC hearing.

460.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, §1985 & §1986, Article I,

Sections 1, 3, 7, 11 & 25 and Article IV, Section 10, and Article VIII, Section 13 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, and Canon 2.2, 2.3, 2.4, 2.6, 2.7, 2.9, 2.11, 2.12, 2.15 & 2.16 of the Utah Code of Judicial Conduct and Rule 63 of the Utah Rules of Civil Procedure.

461.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

### FORTY-FIFTH CAUSE OF ACTION

462.     The foregoing allegations are incorporated as if re-alleged herein..

463.     This count is pled against the individual defendants on behalf of Mr. Willson.

464.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

465.     Under the color of state law, on January 28, 2014 Judge Kouris ruled on Mr. Willson's Pro Se Motion to Disqualify instead of obeying state law and either recusing or passing the motion to an impartial judge. It is wholly inappropriate to rule on a motion claiming bias, as if bias exists, there is no doubt about the forthcoming ruling. Judge Kouris proved this in his ruling.

466.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, and Canon 2.2, 2.3, 2.6, 2.7, 2.9, 2.11 & 2.16 of the Utah Code of Judicial Conduct and Rule 63 of the Utah Rules of Civil Procedure.

467.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

### FORTY-SIXTH CAUSE OF ACTION

468.     The foregoing allegations are incorporated as if re-alleged herein..

469.     This count is pled against the individual defendants on behalf of Mr. Willson.

470.     Judge Himonas is a "person", as that term is used in the text of 42 U.S.C §1983.

471.     Under the color of state law, on February 3, 2014 Judge Himonas ruled on the Pro Se Motion to Disqualify filed by Mr. Willson, despite his obvious bias for Judge Kouris & conflict of interest.

472.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights

under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, §1985 & §1986, Article I, Sections 1, 3, 7, 11 & 25, Article IV, Section 10, and Article VIII, Section 13 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, and Canon 2.2, 2.3, 2.4, 2.6, 2.7, 2.9, 2.11, 2.12, 2.15 & 2.16 of the Utah Code of Judicial Conduct and Rule 63 of the Utah Rules of Civil Procedure.

473.   As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## FORTY-SEVENTH CAUSE OF ACTION

474.   The foregoing allegations are incorporated as if re-alleged herein..

475.   This count is pled against the individual defendants on behalf of Mr. Willson.

476.   Judge Himonas is a "person", as that term is used in the text of 42 U.S.C §1983.

477.   Under the color of state law, on February 13, 2014 Judge Himonas ruled on the Pro Se Motion to Reconsider filed by Mr. Willson, despite his obvious bias for Judge Kouris & conflict of interest.

478.   As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, §1985, §1986, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10, and Article VIII, Section 13 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, and Canon 2.2, 2.3, 2.4, 2.6, 2.7, 2.9, 2.11, 2.12, 2.15 & 2.16 of the Utah Code of Judicial Conduct.

479.   As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## FORTY-EIGHTH CAUSE OF ACTION

480.   The foregoing allegations are incorporated as if re-alleged herein..

481.   This count is pled against the individual defendants on behalf of Mr. Willson.

482.   Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

483.   Under the color of state law, on June 27, 2014 Judge Kouris ruled on a two day trial. In that ruling he ignored the Court's own witness as well as evidence of neglect and abuse of the minor child by the Petitioner and granted the parties joint physical custody instead.

484.   As a result of these wrongful actions, Plaintiff was seized and deprived of his rights

under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 &  30-3-35 and Utah Rules of Civil Procedure sections 43 & 77.

485.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

### FORTY-NINTH CAUSE OF ACTION

486.     The foregoing allegations are incorporated as if re-alleged herein..

487.     This count is pled against the individual defendants on behalf of Mr. Willson.

488.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

489.     Under the color of state law, on June 27, 2014 Judge Kouris ruled on a two day trial. In that ruling he unjustly impoverished Mr. Willson by ignoring all evidence and testimony and ordering alimony and child support amounts which violate Utah law.

490.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 78B -- Chapter 12, 30-3-5, 30-3-34 & 30-3-35 and Utah Rules of Civil Procedure sections 43 & 77.

491.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

### FIFTIETH CAUSE OF ACTION

492.     The foregoing allegations are incorporated as if re-alleged herein..

493.     This count is pled against the individual defendants on behalf of Mr. Willson.

494.     Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

495.     Under the color of state law, on June 27, 2014 Judge Kouris ruled on a two day trial. In that ruling he found Mr. Willson guilty of contempt for violating a court order when compliance with the order was outside Mr. Willson's control. Specifically, the mortgage company refused payments and Petitioner was ordered to dispose of property 16 months prior. Mr. Willson was

found in contempt for not making the payments the mortgage company refused to accept and not making payments on the property Petitioner was ordered to dispose of.

496.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 78B – Chapter 12, 30-3-34 & 30-3-35 and Utah Rules of Civil Procedure sections 43 & 77.

497.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## FIFTY-FIRST CAUSE OF ACTION

498.    The foregoing allegations are incorporated as if re-alleged herein..

499.    This count is pled against the individual defendants on behalf of both Mr. Babbitt & Mr. Willson.

500.    Judge Mark Kouris is a "person", as that term is used in the text of 42 U.S.C §1983.

501.    Under the color of state law, Judge Kouris has been falsifying and otherwise altering the court docket in both cases. Also, despite repeatedly being re-assigned to other judges, Judge Kouris is stalking both Plaintiffs and keeps taking the case back in violation of Utah law.

502.    As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, Sections 1, 3, 7, 11 & 25 and Article IV, Section 10 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, Canon 2.2, 2.3, 2.6 & 2.16 of the Utah Code of Judicial Conduct, Utah Statutes 30-3-34 and Utah Rules of Civil Procedure section 63A.

503.    As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## FIFTY-SECOND CAUSE OF ACTION

504.    The foregoing allegations are incorporated as if re-alleged herein..

505.    This count is pled against the individual defendants on behalf of both Mr. Babbitt & Mr. Willson.

506.     Judge Himonas and the members of the Utah Judicial Conduct Commission are "persons", as that term is used in the text of 42 U.S.C §1983.

507.     Under the color of state law, Judge Himonas and members of the Utah Judicial Conduct Commission failed to protect the civil rights of both Mr. Babbitt & Mr. Willson when reports were made to them of violations of law by Judge Kouris.

508.     As a result of these wrongful actions, Plaintiff was seized and deprived of his rights under the Ninth Amendment, and Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, §1985, §1986, Article I, Sections 1, 3, 7, 11 & 25, Article IV, Section 10, and Article VIII, Section 13 of the Utah Constitution, Canon 1.1, 1.2, 1.3 of the Utah Code of Judicial Conduct, and Canon 2.2, 2.3, 2.4, 2.6, 2.7, 2.9, 2.11, 2.12, 2.15 & 2.16 of the Utah Code of Judicial Conduct.

509.     As a result of Defendants' actions, Plaintiff suffered both economic and non-economic losses, emotional distress and other compensable damages.

## PREVIOUS LAWSUITS & ADMINISTRATIVE RELIEF

510.     No other lawsuits against the defendants have been filed in state or federal court, as no other court has jurisdiction. In fact, given the very nature of this case, specifically that a Utah Supreme Court Justice has been implicated in the conspiracy described herein, no Utah State Court could claim jurisdiction.

511.     Previously, both Mr. Babbitt & Mr. Willson have followed the Utah Rules of Civil Procedure in filing formal motions to disqualify Judge Kouris from their cases. Both motions were dismissed by Judge Kouris, in contravention to Utah Canon of Judicial Conduct. Mr. Babbitt filed one through his attorney and another Pro Se. Mr. Willson filed all 3 of his Pro Se. The Utah Rules of Civil Procedure allow only one motion to disqualify to be filed in a case, therefore, both parties have exhausted their efforts to remove Judge Kouris.

512.     However, through counsel, both parties have approached the presiding judge to ask that Judge Kouris be removed for his conduct. To date, the presiding judge has refused to remove Judge Kouris.

513.     At that point, both Mr. Babbitt & Mr. Willson separately filed complaints against Judge Kouris for his conduct in their respective cases. The review of these complaints is a supposed to be a highly secretive process, but Colin Winchester disclosed to Mr. Willson that both complaints were hotly debated with the Commission. In fact, Mr. Willson learned of Mr. Babbitt's complaint THROUGH Colin Winchester. Mr. Babbitt also learned from a third party

that at the time of their complaints, several other parties had complaints pending against Judge Kouris for similar conduct. We will be subpoenaing those records as part of discovery in this case, as well as the records of attorneys who have asked not to appear before Judge Kouris in the future. It is clear the only thing secret about the JCC complaint system is that they share information freely with anyone who asks, as well as the subjects of the complaints. Disclosing complaints to the subject of the complaint, by its very nature discourages parties from making complaints. In this way, the JCC is able to point out how few complaints there are against judges without revealing the policies they implemented to ensure no complaints are made.

514.     The Judicial Conduct Commission dismissed both complaints as being without merit. However, both complaints were passed along to Judge Kouris and Judge Kouris entered a ruling on Mr. Willson's complaint, as shown on that docket. Judge Kouris interpreted Mr. Willson's complaint to the JCC as a motion to disqualify him as judge and ruled that he would not step aside. This proves collusion between Judge Kouris and the JCC, most likely Judge Himonas but possibly another bad actor within the JCC.

515.     Mr. Babbitt has two appeals pending in his case, but this will provide no relief. It is likely the Court of Appeals will rule in Mr. Babbitt's favor, however, with Judge Kouris on the case, it simply allows him yet another opportunity to violate the law in his efforts to retaliate against Mr. Babbitt.

516.     Judge Kouris has now taken steps to punish both Mr. Babbitt & Mr. Willson in their cases in retribution for their motions to disqualify and complaints to the JCC, as described above. If allowed to remain on their cases, there is no doubt he will seek further retribution for the public embarrassment this action will cause. However, he has literally put both Plaintiffs in the position where they have nothing left to lose.

## REQUEST FOR RELIEF

517.     We believe that we are entitled to the following relief:

1. Declaratory relief, including but not limited to a declaration that Defendants' actions violated the Plaintiffs rights under the United States & Utah Constitutions, violated the Utah Judicial Code of Conduct & violated Utah state laws;

2. Judge Kouris be immediately and forever removed from our cases and the Utah Judiciary;

3. Judge Kouris be prohibited from communicating in any manner, directly or indirectly, with the new judge assigned to our cases;

4. Every order entered by Judge Kouris immediately set aside and Commissioner Tack or an

alternate impartial judge given authority to act as Judge in both Mr. Willson & Mr. Babbitt's cases and retry all issues previously heard by Judge Kouris;

5. Immediate dismissal of all members of the Judicial Conduct Commission, as well as their administrative staff, and appointment of completely new Commission members & staff who will adhere to the Utah Constitution. It is unknown how many members of the JCC besides Judge Himonas have passed confidential information to subjects of complaints. It is known beyond a reasonable doubt that both Colin Winchester and Judge Himonas have done so;

6. Compensatory damages in the form of attorney's fees for this action, as well as for all parties in Mr. Babbitt's & Mr. Willson's respective cases due to the undue financial burden Judge Kouris has created for every party involved in those cases;

7. Compensatory damages in the form of lost wages Mr. Babbitt & Mr. Willson have suffered for this action, and also lost wages for all parties in our respective cases due to the required number of filings & amount of preparation necessitated by Judge Kouris' malicious actions;

8. Compensatory damages in the form of complete reimbursement to Mr. Babbitt for travel costs & supervision fees paid in order to obtain visitation with his daughter;

9. Compensatory damages in the form of complete reimbursement to Mr. Willson for therapy he has had to receive to deal with the PTSD inflicted by Judge Kouris;

10. Compensatory and consequential damages in the form of $5,000,000 for pecuniary losses suffered by Mr. Babbitt & Mr. Willson;

11. Compensatory and consequential damages in the form of $5,000,000 for non-pecuniary losses suffered by Mr. Babbitt & Mr. Willson;

12. Punitive damages allowed by law;

13. Pre-judgment and post-judgment interest at the highest lawful rate;

14. Attorneys' fees and costs of this action; and

15. Any other relief this Court deems just and appropriate.

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that he/she is the plaintiff in the above

action, that he/she has read the above complaint, and that the information contained therein is true

and correct. 28 U.S.C. §1746; 18 U.S.C §1621.

Executed at ___SALT LAKE CITY, UT___ on ___MARCH 30,___ 2015.

          (Location)              (Date)

_____

Signature of Anthony Babbitt

_____

Signature of J. Phillip Willson

SUBSCRIBED AND SWORN (OR AFFIRMED) TO BEFORE ME ON

THIS ___March 30, 2015___ DAY OF MARCH, 2015 BY

ANTHONY BABBITT AND J. PHILLIP WILLSON

_____ State of Utah

NOTARY PUBLIC - State of Utah



WENDEE ADAMS
NOTARY PUBLIC · STATE OF UTAH
COMMISSION# 680416
COMM. EXP. 02-18-2019